IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID W. BROWN, JR., APPELLANT.

Filed March 6, 2018.    No. A-17-365.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Mallory N. Hughes, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

David W. Brown, Jr. (Brown), was convicted by a jury of possession of marijuana with intent to distribute and failure to affix a tax stamp. The Douglas County District Court sentenced Brown to concurrent sentences of 4 to 6 years' imprisonment for possession with intent to deliver, and 20 to 60 months' imprisonment for failure to affix a tax stamp. In this direct appeal, Brown claims only that his trial counsel was ineffective. We affirm the judgment of the district court.

## BACKGROUND

Brown was arrested on June 25, 2014, as a result of him receiving a package mailed from California; it contained approximately 10 pounds of marijuana. The package, addressed to "Dennis Brown" at a residence on Maple Street in Omaha, Nebraska, was intercepted at a "Federal Express" (FedEx) shipping facility in Omaha. After a police service dog "alerted" and "indicated" on the

package, a search warrant was obtained to open the package. The package contained marijuana. The package was subsequently resealed, and an undercover police officer, posing as a FedEx employee, delivered it to the address indicated on the package. Brown was outside the residence when the undercover officer arrived and announced a package for "Dennis Brown"; Brown accepted the package. The package was never taken into the residence, and eventually Brown walked out with another male, and Brown put the package into the back of a van parked on the street by the residence. Police, who had been surveilling the delivery, then detained Brown as he walked back towards the residence, as well as the other male who was in the van.

Brown was charged on August 28, 2014, with (1) possession with intent to distribute marijuana, in violation of Neb. Rev. Stat. § 28-416 (Reissue 2016), and (2) failure to affix a tax stamp in violation of Neb. Rev. Stat. § 77-4309 (Reissue 2009).

Brown filed an amended motion to suppress on April 1, 2015, asking the court to "suppress and exclude from use against him any and all evidence obtained by the State as a result of a search and subsequent arrest . . . on or about June 25, 2014[.]" The motion asserted "the search warrant is invalid in that there is insufficient evidence stated . . . to demonstrate sufficient probable cause to believe that evidence of a crime would be located in the premises described in the warrant." Brown also alleged that the statements made by him "were the fruits of an unlawful interrogation." At the hearing on the motion, the State asked Brown's counsel for clarification as to what exactly she was seeking to suppress. Brown's counsel stated she was challenging "the warrant in this case with respect to [Brown and] statements that were made by [Brown]"; the detention of Brown and not allowing him "to come and go as he saw fit"; and she was asking the court to make a determination as to whether or not the detention was made on reasonable suspicion based on the facts at the time. The State was under the impression the motion to suppress pertained to the search warrant for the package, and that any inquiry into the validity of the warrant was based on what was contained within the "four corners" of the affidavit. Brown's counsel then stated she was challenging "the warrant which involved the packaging that they opened and there is a problem with [Brown's] consent" to search the residence.

The State proceeded to call Nebraska State Patrol Trooper Richard Lutter. Lutter testified that he received a tip from a Drug Enforcement Agency (DEA) agent regarding a specific "airbill number" for a package that the agent believed contained a controlled substance based on information from a confidential informant. Lutter intercepted the package at a FedEx shipping facility. The package was shipped from Sacramento, California, and was addressed to "Dennis Brown," not "David Brown," at an address on Maple Street in Omaha. Based on observations Lutter made about the package, including, the shipping method used, the area it was shipped from, and how the package was labeled, he believed there was probable cause to subject the package to a canine sniff. The service dog used in the canine sniff "indicated" to the odor of a controlled substance in the package. Based on the canine sniff, the tip from the DEA agent, and Lutter's observations about the package, he applied for and obtained a warrant to search the package. (The search warrant was received as an exhibit without objection.) After the warrant was obtained, the package was searched, and it was discovered to contain marijuana. Lutter testified that the police performed a "controlled delivery" of the package to the address on the label that resulted in Brown's arrest at that location.

Lutter testified that a different officer initially interviewed Brown after he was detained, and during that interview Brown gave his consent to search the residence. Based on that consent, officers searched the residence. After the initial questioning by the other officer, Lutter then interviewed Brown as well. Lutter testified he informed Brown of each of his *Miranda* rights, which Brown appeared to understand. Lutter did not make any threats or promises in order to elicit any statements from Brown, and at no time did Brown indicate he wanted to stop talking or to speak with an attorney. Lutter asked Brown several questions, but Brown did not want to answer or "give reasonable answers." Brown requested to move the interview inside the residence while it was being searched because he was worried a female in the house he did not know might place some of her property out of her purse and he might be "held . . . accountable for that property." Lutter allowed the interview to be moved inside so Brown could observe the search. Lutter said Brown answered his questions voluntarily and without any mental confusion, but Lutter did not testify as to any specific statements made by Brown. At the end of Lutter's testimony, the State offered exhibit 2. It contained videos of the search of the package, interviews with Brown, and interviews with other people besides Brown. Brown's counsel objected to the court watching the interviews of the other people besides Brown; the court indicated it would review only relevant portions of the video and received the video over defense counsel's objection.

The court issued an order denying the motion to suppress on May 26, 2015, the details of which are discussed later. Brown's trial commenced on July 20 and concluded on July 22. The State called a number of witnesses to testify and exhibits were offered and received. We summarize only the evidence that may have some bearing on Brown's claims of ineffective assistance of trial counsel.

Lutter, the Nebraska State Patrol Trooper who testified at the suppression hearing, also testified at trial. He said that he worked in the commercial interdiction drug task force, and part of his job is to monitor shipping services, like FedEx, to try to intercept packages with narcotics. The task force looks for certain characteristics regarding packages containing narcotics, including the manner in which they are packaged, whether they are excessively taped, whether they are coming from a known narcotics source location, how they are being shipped, and whether the package is shipped from an individual or a business to an individual. He stated it is not uncommon for the information on the shipping label to be fictitious, including the names for the shipper and for the recipient. If investigators observe one or more of those indicators on a package, they may begin an investigation on the package.

Lutter was working on June 25, 2014. He was contacted by an agent from the DEA regarding a package arriving at a FedEx facility in Omaha. Lutter then conducted surveillance at that facility on the package with a specific FedEx "air bill number" given to him by the DEA, though he did not have information regarding the name of the recipient on the package. He found the package and noticed it was in a new box, had more tape than normal, was being shipped from California, a known "source area" of controlled substances, and was shipped through a "Post & Pack" company to a residence. Based on those factors, Lutter made arrangements to "deploy a K-9 on it."

Nebraska State Patrol Trooper Toby Czapla, a police service dog handler for 9 years, testified he was contacted on June 25, 2014, to go to a FedEx facility in Omaha. He and his service dog, who had been trained to sniff packages for narcotics, searched an area determined by Lutter;

however, Czapla was not aware of exactly where the package was before giving the service dog his search command. Czapla is given very limited information by design to try and alleviate any preconceived notions that may come from having further information. He was given a search area; he did not recall if there were other packages, but there were other objects such as pallets and cabinets. His service dog "did alert and indicate to a package in the area."

Based on the positive "indication" during the canine sniff, Lutter obtained a search warrant to search the package. Members of Lutter's law enforcement team searched the package, which contained approximately 10 pounds of marijuana. The package was then resealed and the officers made arrangements to make a "controlled delivery" of the package to "Dennis Brown" at the address listed on the label. Lutter investigated but could not find anyone with the name "Dennis Brown" associated with the address listed on the package.

Officer Jeff Hunter, a narcotics officer with the Omaha Police Department, posed as a FedEx delivery person and delivered the package to the address on the label. A law enforcement team, including Lutter, observed from a distance at different positions. Hunter testified he was working on June 25, 2014, and he was aware the package in question had been searched and he was trying to make a "controlled delivery" to the residence in question. He was wearing a FedEx shirt, and drove a white pickup truck to the residence. As he was walking up to the residence, he encountered Brown and an unknown female outside of the residence in the yard. Hunter asked for "Dennis Brown," because "that's the name that's on the package." Hunter clarified, "Doesn't necessarily mean that it's the real name, but whoever is on the package I want them to claim and accept the package under that name." Brown "reached his hands out to accept [the package]" as Hunter handed it to him. Brown did not deny that he was "Dennis Brown," and "willingly accepted the package." Hunter said he then returned to the pickup and left. He observed the female who had been with Brown leave "shortly thereafter, if not at the exact same time."

Lutter testified he was conducting surveillance of the residence during the delivery, and he was advised over his radio that a male, later identified as Brown, "accepted the package." However, instead of taking the package into the residence, Brown set it down outside and went into the residence briefly. Lutter was advised over his radio that Brown then took the package and carried it towards the street with an individual later identified as "Kevin Waites." Waites had also come out of the residence, walking next to Brown. From his position, Lutter was able to observe Brown and Waites walking, and Brown subsequently put the package into the back of a van. Waites got into the driver's seat of the van and Brown began walking up the sidewalk toward the residence. At that point, Lutter "activated [the] emergency lights" of his vehicle, and other members of the law enforcement team activated theirs as well. They parked in front of and behind the van on the street so that it could not leave and made contact with Brown and Waites; Brown was then detained and placed in a police patrol vehicle.

At the close of the State's evidence, Brown moved to dismiss the case, which was overruled. Brown put on no evidence. A formal jury instruction conference took place out of the presence of the jury, and Brown's counsel requested a jury instruction on "entrapment," which the court ruled was not supported by the evidence and the instruction was not given. After deliberating, the jury found Brown guilty of both counts against him. Brown was subsequently sentenced to concurrent sentences of 4 to 6 years' imprisonment for possession with intent to deliver, and 20 to 60 months' imprisonment for failure to affix a tax stamp.

Following a successful motion for postconviction relief filed by Brown, he was granted the right to file the present direct appeal from his original convictions and sentences.

## ASSIGNMENT OF ERROR

Brown assigns, restated, that his trial counsel provided ineffective assistance of counsel and that he would not have been found guilty but for counsel's deficient performance.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

Brown assigned a general claim of ineffective assistance of counsel, but argues specific instances of alleged ineffective assistance arising during several facets of the criminal proceedings against him. Brown is represented in this direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). Otherwise, the issue will be procedurally barred. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015). To show deficient performance, a defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Newman, supra*. An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares,*

*supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*. When reviewing claims of ineffective assistance, an appellate court will not second-guess a trial counsel's reasonable strategic decisions. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017).

An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). We conclude that the record is sufficient to address some, but not all, of Brown's ineffective assistance claims. We begin with those we can decide on the present record.

*Lack of Communication and Waiver of Jury Sequestration.*

Brown claims that "[o]ne of the primary issues in [t]rial [c]ounsel's representation was a serious lack of communication." Brief for appellant at 6. In this regard, he first claims his trial counsel was ineffective for not explaining, prior to the day of trial, his right to sequester the jury, "which was just one of the many things that she had not discussed with him." Before the prospective jurors were brought into the courtroom for the jury selection process, the court asked Brown's trial counsel whether she had discussed the issue of sequestration with Brown. Brown's counsel said she had not. The court told Brown it needed to inquire of him whether he would agree to allow the jury to go home each day after trial rather than be confined in a hotel room. Brown said he did not understand. The court suggested Brown and his attorney take time to discuss this, which they did. Once back on the record, Brown said he did not want his attorney because "she's too inadequate at informing me of what's going on." The court said this was the first time it was hearing about this issue, and that jurors had been summoned and "we're going forward today with your trial."

The court then returned to the issue of jury sequestration. The court explained to Brown that Nebraska law required a jury to be kept together once the case is finally submitted to them, meaning they would have to make arrangements for them to be at a hotel with security, but that a defendant could waive that. When asked again if he understood, Brown replied, "Not really." He then said, "I'm not saying that I agree with it, and I'm not saying I don't agree with it. I'm just saying I don't understand." The court then asked, "Do you agree that the jury does not have to be kept together once the case is submitted to them for their decision?" Brown responded, "So, okay, I agree to that. Is that - so they can just go and come?" The court said that was correct, and once again discussed allowing the jurors to go home at night and return the next morning rather than making them stay all together at a hotel. The court concluded by saying, "So you're indicating, as I understand it, you agree that they don't have to be kept together during deliberations, correct?" Brown responded, "Correct."

Based on the multiple explanations of his right to sequester the jury given by the court to Brown, along with the opportunity Brown was given to confer with his counsel, Brown cannot show he was prejudiced by counsel's failure to inform him of his right to sequester the jury until the day of trial. This is particularly so since once the matter was submitted to the jury for deliberation, a verdict was reached the same day. This claim of ineffective assistance of trial counsel fails.

*Lack of Communication and Plea Bargain.*

After the jury sequestration issue had been addressed, Brown's counsel informed the court that Brown "has told me that he does not want me as his advocate here today." When the court asked Brown why he did not want his attorney to represent him, Brown said the prosecutor had told his attorney that there were more videotapes for her to watch, so Brown told his attorney to call him when she received those videotapes. According to Brown, his attorney said, "okay, or whatever, you know, and then just walked off." Brown said he was waiting to hear from his attorney about the videotapes when his attorney called him at home and said "they want to give you a deal." (Brown does not provide a timeframe for when this conversation took place, but it was clearly before trial was scheduled to commence.) Brown said he told his attorney, "I don't know what you're talking about because I never seen the videotapes that you're supposed to have got." According to Brown, his attorney "just plays me off like, oh, I'm too busy. You know, so, I mean, if she's too busy to help me out in the process of this, when it comes to trial, how is she going to represent me?"

The court then inquired of the State as to whether it had complied with providing defense counsel with all the information they expected to use at trial. The State confirmed compliance, and also noted that all video evidence had been supplied prior to the hearing on the motion to suppress. The State informed the court that defense counsel had objected to the audio on the video when the officers were opening up the package, so the State agreed to modify the video to redact all the sound off of it. The State believed Brown may have overheard the conversation between the State and defense counsel regarding the redacted video.

Noting that defense counsel had been provided the video before the suppression hearing, the court explained to Brown that his attorney was objecting to the audio on the video and was "protecting you [Brown] in that regard." The court further pointed out that just because a person is not satisfied with counsel does not give that person a right to be represented by a counsel of his or her own choosing. The court asked if Brown was ready to proceed with his attorney, to which he responded, "I don't believe I can represent myself, so I think - I guess I'm going to have to ride with her, you know[.]"

After the court concluded there was not a sufficient reason to appoint new counsel, it stated it was going to leave the courtroom "for further discussion between counsel and the defendant with his attorney, . . . I've heard that there was an offer made. And I don't know what the offer was." Brown stated, "I didn't either." After the judge left the courtroom, the State said, "I just want to make a record of what the plea offer is so you understand it." The State discussed the possible penalties of Brown's present charges, noting that if the sentences on both charges were run consecutively, Brown would face a maximum possible sentence of 25 years' imprisonment and potential fines of up to $25,000 on one charge and $10,000 on the other. As part of the plea offer, the State was willing to dismiss the tax stamp charge and reduce the possession with intent to deliver marijuana (Class III felony) to an attempted possession with intent to deliver (Class IIIA felony). The State said, "[I]f you take the plea agreement, the most your sentence can be is 5 years['] imprisonment and/or up to a $10,000 fine." The State also indicated Brown could get probation, that "[p]robation is always a possibility. That's up to the Judge." The State summed up

the offer saying, "So the plea offer is reducing your possible exposure from a maximum of 25 years to 5 years. It's still a felony. . . . So do you understand that that's the plea agreement?"

Defense counsel asked Brown if he had a response. Brown stated, "Wait a minute. I have to think about this. I really do because if you would have done what you had to do, and I would know better what's going on. Because me, like, if I read this paper, I can't understand it." The State asked if Brown heard what had been said, and Brown responded, "Yes." He was then asked if he wanted "a little bit of time to think about it." He said he did, and at that point the parties went off the record. When back on the record, the State said, "I just want the record to reflect that a lot of time has passed now. Sir, we're going to need to proceed to trial, so I assume you're rejecting the plea offer?" The State further asked, "You understand the plea offer, is that true, you understand it? Do you understand what it is? I just need a yes or no." Brown was nonresponsive, and at that point, the State said, "Okay. That's the end of the record."

Brown claims his trial counsel "did not inform [Brown] of the plea offer until it was discussed on the record [just prior to the commencement of trial] and then did not make sure that [he] understood the terms of the offer, resulting in the offer being refused by virtue of his inability to respond." Brief for appellant at 10. Brown argues that "given the proper information regarding the plea and his chances at trial [he] may have chosen to accept the plea deal." *Id.* at 8. He asserts that he "could not seriously consider the plea offer" because he was not given an explanation of the offer "prior to the date of the trial." *Id.* The record reflects that Brown was informed of a plea offer in advance of trial when his counsel contacted him at home, although it is not clear when that conversation took place. Regardless, if Brown was unclear of the details at that time, those details were provided by the State, on the record, prior to the commencement of trial. Brown simply suggests he was "expected to make a major, life-altering decision without any explanation and almost no time to reflect on it." *Id.* at 7. The record refutes this claim.

We note that in *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017), after the State rested its case, the defense did not call any witnesses or offer evidence, as in the present matter. The defendant in *Mora* made a claim similar to Brown's, alleging trial counsel failed to adequately communicate with him to prepare a defense and explore his options, and that he was unable to make an informed decision about whether to engage in plea negotiations, whether to accept a plea offer, what defense to present at trial and whether he should testify or remain silent. The Nebraska Supreme Court said these were conclusory statements and failed to set forth counsel's deficiency. It found the only sufficiently specific allegation regarding failure to communicate was the claim that trial counsel did not provide any discovery to him. We find the same remark about conclusory statements to be true here as well.

The State explained the plea bargain to Brown in detail, on the record, and allowed him time to consider it while his counsel was present. The State indicated that "a lot of time has passed," while they were off the record for Brown to consider the plea offer. Despite being given "a lot of time" before the commencement of trial to consider the plea, Brown did not indicate that he had any questions about the plea, or that he did not understand it, or that he needed more time to consider the offer. Instead, he simply refused to answer the State's questions as to whether he understood the plea offer and as to whether he was rejecting the offer. Because he was given a thorough explanation of the plea agreement being offered, and had the opportunity to ask for more information, and had time to consider the offer with his counsel present to advise him prior to the

trial, Brown cannot show he was prejudiced by counsel's alleged failure to inform him of the plea offer prior to the day of trial. Brown's decision to refuse to answer questions or ask for more time to confer with his attorney does not constitute deficient performance by his trial counsel. This claim of ineffective assistance of trial counsel fails.

*Suppression Hearing.*

Brown also alleges his trial counsel was ineffective at the hearing on his motion to suppress. He argues:

> Any possible suppression issues were so muddled in presentation that the evidence was allowed in before the jury. There were several concerns regarding whether or not there was probable cause to get the warrant to search the box and in suppressing [Brown's] statements to police, but they went unaddressed in the confusion in how they were presented to the [c]ourt.

Brief for appellant at 10.

Brown appears to be suggesting that since his trial counsel was not successful in suppressing the evidence upon which he was convicted, she was somehow deficient in her performance and this resulted in his conviction. The record does not support this claim. The key evidence resulting in Brown's conviction was his acceptance of the package of marijuana addressed to "Dennis Brown" at the address indicated on the package. Brown's counsel attempted to challenge the validity of the search warrant for the package; clearly the evidence in the package was significant to the case against Brown. Although the court asked Brown's counsel multiple times at the suppression hearing to clarify what she was challenging, Brown's counsel ultimately stated she was "challenging the validity of the warrant, but there are some other things I'm challenging as well." The court and counsel clarified another issue had to do with consent (to search the house), and counsel added, she wanted to determine "whether or not the police had suspicion that [Brown] had been or was engaged in some type of criminal activity." At the end of the hearing, the court asked for the issues to be briefed and for Brown's counsel to identify the specific points raised in the motion to suppress, and to provide supporting law.

In an order entered denying the motion to suppress, the district court stated that Brown's amended motion to suppress sought to suppress the search warrant (we note that only the search warrant for the package was at issue), and sought to suppress Brown's statement. The court also noted that Brown's counsel verbally indicated at the suppression hearing that she was seeking to suppress the consent to search the house as well. The court indicated that Brown "seeks to suppress all evidence obtained by the State." Therefore, regardless of trial counsel's strategy when questioning the witness at the suppression hearing, it is evident she did not perform deficiently. The court was aware that Brown was challenging the search warrant, the consent to search the home, and any statements given by Brown.

Furthermore, Brown would not be able to show prejudice on the search warrant issue. The law supports the district court's conclusions regarding the search warrant to open the package, which resulted in the discovery of the key evidence in the case against Brown. For a search warrant to be valid, it must be supported by an affidavit which establishes probable cause. See *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017). In evaluating the sufficiency of an affidavit used

to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id.*

In the present matter, the district court properly considered whether there was probable cause to support the search warrant to open the package. (We note that this was the only search warrant executed; although an anticipatory search warrant for the house had been issued, it was never executed since the package was never taken into the residence). The court concluded several factors supported probable cause in the search warrant for the package, including: a confidential informant believed the package contained a controlled substance, routine surveillance was conducted and it was determined the package was coming from a known drug source area and was being shipped to an individual, and a trained police service dog alerted and indicated to the package. Defense counsel attempted to challenge probable cause for the affidavit from different angles. Her inability to succeed in suppressing the evidence was not due to deficient performance; rather, the law as applied to these facts determined the outcome.

As to the challenge to Brown's consent to search the residence and statements given by Brown, the court noted that the recording of both the consent and "the Miranda statement" show that both were given with no threats made by the officers. The court found that Brown's statement was given freely, voluntarily and intelligently. These conclusions are consistent with our review of the videotape. Importantly, we note that Brown's statements to law enforcement officers after they made contact with Brown were never introduced or referenced at trial, nor did any evidence recovered in the search of the home result in the criminal charges filed against Brown. Therefore, Brown could not be prejudiced by his counsel not making better arguments with regard to suppressing his statements or his consent to search the home, as neither his statements nor the search resulted in incriminating evidence related to the offenses with which he was charged. A defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Accordingly, Brown's claim of ineffective assistance of trial counsel with regard to his motion to suppress evidence fails.

*Failure to Cross-Examine Effectively.*

Brown also alleges that his trial counsel was ineffective in conducting her cross-examinations. This argument amounts to a failure to put the State's case to "meaningful adversarial testing." In cases where counsel completely fails to submit the State's case to meaningful adversarial testing, prejudice to the defendant will be presumed. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). But when the record shows that the State's witnesses were thoroughly cross-examined consistent with the defense theory, there was meaningful adversarial testing of the prosecution's case. *Id*

For his argument on this claim, Brown only says his counsel "would confuse issues in the case, requiring the Court to stop the trial multiple times to correct the issues in an effort to keep her questioning on track and to avoid confusion for the jury." Brief for appellant at 10. He then simply notes pages and line numbers from the record, which we have reviewed. The references pertain to two instances at trial where Brown's counsel was cross-examining Lutter. In the first instance, defense counsel was asking whether Lutter knew who owned the residence on Maple Street, and whether he provided ownership information when obtaining the search warrant. Lutter

said he did not provide any information regarding the owner of the residence. At that point, Brown's counsel asked, "So when you came to the residence and you had the warrant, there was no specific reference as to who lived there or who the warrant was for?" At that point, the court suggested a sidebar. The court told counsel there were two warrants, and that Lutter did not go to the residence with the warrant to search the package, and "I don't want the jury to be confused." Brown's counsel acknowledged there were two warrants, and that she would "go back and make sure we're talking about the box as opposed to the residence." She then specifically asked Lutter about when he applied for the warrant to "open that box, did [he] list anyone's name on the warrant specifically as far as who?" Lutter said he listed the shipper and recipient of the package; and he acknowledged the recipient of the package was "Dennis Brown," not "David Brown." This line of questioning was consistent with other questions by defense counsel attempting to demonstrate, in essence, that her client was not the intended recipient of the package.

In the second instance referenced by Brown, his counsel was again establishing that at the time the search warrant for the package was obtained, Lutter did not have information related to who was living at the residence on Maple Street. Lutter said he could not "associate Dennis Brown with that address through the database," but that another deputy was trying to identify that information. Brown's counsel then asked, "So when you received that warrant and decided to conduct surveillance, at that point that's all you know." The court again suggested a sidebar and said, "I think we're moving in the wrong direction." The court explained, "You were talking about the search warrant for the package and then you said - then you got the warrant and you went to their residence, that's not what happened." The court reminded Brown's counsel that it did not want "the jury to be confused about warrants because a search warrant is not all that relevant to this case."

Although Brown's counsel may not have framed her questions with sufficient clarity at times, her line of questioning was not deficient. Further, Brown cannot show prejudice by the cross-examination for several reasons. Despite her phrasing of questions possibly blurring the distinction between the two search warrants, Brown's counsel was still able to demonstrate to the jury at multiple points during the cross-examination that the package was not sent to the defendant "David Brown" but to "Dennis Brown" and that there was no "Dennis Brown" associated with the residence where the events took place. Counsel questioned the witness regarding the names on the search warrant for the package and the names on the package itself, neither of which included the name of her client. She also questioned what information was available with regard to persons associated with the address on the package. Such information was relevant or helpful in furthering any defense theory that Brown was not the designated recipient of the package. Ultimately, despite any confusion, trial counsel's cross-examination in these two instances was not deficient in subjecting the State's case to meaningful adversarial testing. Brown's claim of ineffectiveness of trial counsel on this issue fails.

*Insufficient Record for Remaining Claims.*

We do not have an adequate record before us to reach Brown's remaining allegations that his trial counsel was ineffective. Brown asserts his trial counsel "made no effort to actually present a defense for [Brown]." He claims counsel failed to investigate or put on potential evidence to disprove the State's theory; failed to present evidence for an entrapment defense; and failed to

- 11 -

impeach the State's witnesses. He specifies the evidence not investigated or used at trial was a video of the events on June 25, 2014, that might have existed from the television show "COPS," as well as potential witnesses such as Waites or the female who was at the residence when Hunter delivered the package to Brown. He also states his trial counsel did not review discovery with him or allow him to review discovery himself, and "did not inform him about important decisions, such as agreeing that the State could modify the video tapes later presented at trial." Brief for appellant at 10. Finally, Brown claims there was a previous negative relationship between Brown's sister and his trial counsel that made his trial counsel biased against him.

We find Brown has made sufficiently specific allegations regarding these issues. However, as the State points out, Brown does not cite to any part of the record to support any of these remaining allegations. It is unclear if any of the purported evidence exists, if there were any conversations regarding Brown reviewing any discovery, or if Brown's counsel had any type of relationship with Brown's sister that created a bias. Further, some of these claims implicate matters of trial strategy, and cannot be determined on the record before us. Because an evidentiary hearing will be necessary, the record before us is insufficient to review Brown's ineffective assistance of trial counsel claims on these remaining issues.

## CONCLUSION

For the reasons stated above, we find several of Brown's claims for ineffective assistance of trial counsel fail, while other claims implicate matters of trial strategy or require an evidentiary hearing and cannot be determined on the record before us. Accordingly, we affirm the judgment of the district court.

AFFIRMED.