Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/01/2017 09:11 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
ROBERT HIDALGO, APPELLANT.
___ N.W.2d ___

Filed June 9, 2017.    No. S-16-660.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Search Warrants.** The Fourth Amendment to the U.S. Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and further provides that no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

3. **Constitutional Law: Search Warrants: Probable Cause.** The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees.

4. **Search Warrants: Affidavits: Probable Cause.** A search warrant, to be valid, must be supported by an affidavit which establishes probable cause.

5. **Search Warrants: Probable Cause: Words and Phrases.** Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found.

6. **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. The question is whether, under the

totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.

7. **Search Warrants: Affidavits: Evidence: Appeal and Error.** In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

8. **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. These two prongs are not accorded independent status, but, rather, are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

9. **Search Warrants: Affidavits.** Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given.

10. ____: ____. An affidavit in support of the issuance of a search warrant must affirmatively set forth the circumstances from which the status of the informant can reasonably be inferred.

11. **Search Warrants: Motor Vehicles.** As a general rule, vehicles located on premises described in a warrant may be searched, even if the vehicle is not specifically listed in the warrant.

Appeal from the District Court for Douglas County: Duane C. Dougherty, Judge. Affirmed.

Michael J. Wilson and Glenn A. Shapiro, of Schaefer Shapiro, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.

## I. INTRODUCTION

Following a stipulated bench trial, Robert Hidalgo was convicted of one count of possession of a firearm by a prohibited person and was sentenced to 3 to 5 years' imprisonment. He appeals. We affirm.

## II. FACTUAL BACKGROUND

On July 10, 2015, officers with the Omaha Police Department received a Crime Stoppers tip that a Hispanic male named "Roberto" was a felon and was in possession of illegal firearms. "Roberto" was described as an active member of the "18th Street" gang, was between 30 and 35 years of age, and had the nickname "Sporty." The informant also indicated that "Roberto" lived at a particular address in Omaha.

Officers attempted to corroborate this tip. On July 21, 2015, officers drove by of the address referenced in the Crime Stoppers tip. Officers noted approximately six tattooed Hispanic males between the ages of 20 and 30 sitting on the porch and dressed in loose clothing. According to the affidavit in support of the search warrant, the "physical description of the male persons had characteristics similar to that of gang members, between the clothing, how it was worn and the tattoos." The individuals looked alarmed at the approach of the officers' police cruiser. As such, the officers did not stop.

Officers noted and checked the registration on a white Nissan Sentra parked in the driveway. The vehicle was registered to Hidalgo and Jacqueline Linares. In addition, the utilities at the address listed Linares as the account holder. Upon learning these names, officers researched Hidalgo further and determined that he was born in May 1987, was a known

member of the "18th Street" gang, and went by the nickname "Shorty."

A "trash pull" at the address was completed that night. Two relevant items were found in the trash: a piece of mail directed to the address referenced in the tip and marijuana stems, seeds, and leaves.

Based upon this information, officers obtained a search warrant for

> the premises [referenced in the tip and verified by officers in] Omaha, Douglas County, Nebraska, which is further described as a white in color one and one half story residence with green trim. The unit has a white front door which includes a green storm door in front of it. The [house] numbers . . . are located at the exterior of [the] house on the trim of the covered patio. [The house] is located on the west side of [a nearby] intersection . . . .

The affidavit in support of the warrant sought marijuana and "all monies, records, weapons and ammunition used to conduct an illegal narcotics operation."

The search warrant was executed on July 26, 2015, granting officers the authority to "search the afore described location and/or person(s)." During the search, officers found a firearm and marijuana in the residence, as well as another firearm in a neighboring yard, which law enforcement believe was placed there by one of Hidalgo's associates just prior to the execution of the search warrant. In addition, the Nissan Sentra in the driveway of the house was searched and a third firearm was recovered from it. Hidalgo later admitted that the firearm in the vehicle belonged to him; two associates admitted to owning the other firearms.

Hidalgo had been previously convicted of being an accessory to a felony, a Class IIIA felony. As such, the possession of a firearm by him was unlawful and he was charged accordingly. Following a stipulated bench trial, Hidalgo was convicted of possession of a firearm by a prohibited person, a

Class ID felony, and was sentenced to 3 to 5 years' imprisonment. He appeals.

## III. ASSIGNMENTS OF ERROR

Hidalgo assigns that (1) his Fourth Amendment rights were violated when his house and vehicle were searched, because the application and warrant did not establish probable cause, and (2) officers exceeded the scope of the search warrant when they searched a vehicle parked outside the house described by the search warrant.

## IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[1]

## V. ANALYSIS

### 1. PROBABLE CAUSE

Hidalgo first argues that the evidence against him should be suppressed, because there was no probable cause to support the issuance of the search warrant. In arguing this, Hidalgo asserts that the affidavit did not sufficiently establish the reliability of the anonymous tip; the corroboration of information contained in the tip did not establish reliability, because the information confirmed was "innocent details"; an unspecified amount of marijuana leaves, seeds, and stems found during a trash pull does not establish probable cause; and the good faith exception does not apply here.[2]

---

[1] *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014).

[2] Brief for appellant at 10.

[2] The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution provides similar protection.[3]

[3-7] The execution of a search warrant without probable cause is unreasonable and violates these constitutional guarantees.[4] Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause.[5] Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found.[6] In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.[7] In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.[8]

---

[3] Neb. Const. art. I, § 7.

[4] *State v. Hill, supra* note 1.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

(a) Anonymous Tip

[8] When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation.[9] These two prongs are not accorded "independent status," but, rather, are

> better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.[10]

[9,10] Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given.[11] An affidavit in support of the issuance of a search warrant must affirmatively set forth the circumstances from which the status of the informant can reasonably be inferred.[12]

Hidalgo and the State agree that this falls under the fourth scenario—that a police officer's independent investigation

---

[9] *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *overruled on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

[10] *Illinois v. Gates*, 462 U.S. 213, 233, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

[11] *Id.*

[12] *Id.*

establishes the informant's reliability or the reliability of the information the informant has given. Hidalgo argues that the officers were not able to corroborate all parts of the tip—in particular, the portion suggesting that he was a felon in possession of illegal firearms—and this was sufficient to render the entire tip unreliable.

We turn first to Hidalgo's claim that the entire tip must be corroborated. Hidalgo offers no case law to support this assertion. Nebraska case law suggests differently. We held in *State v. Vermuele*[13] that "[t]here is no requirement that the 'crime' itself be corroborated or verified in order to justify probable cause for a warrantless search . . . ."

We also disagree with Hidalgo's contention that all law enforcement did was confirm innocent details. The record shows that law enforcement conducted an investigation in order to identify "Roberto." Officers were able to establish that the utilities at the address noted by the informant listed Linares as the account holder and that Linares, along with Hidalgo, owned the white Nissan Sentra in the driveway of the house. The vehicle registration indicated that Hidalgo's first name was Robert; the informant provided the name "Roberto" in the tip. Robert and Roberto are similar, which supports the reliability of the tip.

Once learning the name "Hidalgo," the officers, through their work in the gang suppression unit, identified Hidalgo as a known member of the "18th Street" gang, as the informant had indicated, and had the nickname "Shorty." "Shorty" is similar to "Sporty," the nickname provided by the tipster.

In addition, when officers drove by the property, they noted a group of Hispanic men between the ages of 20 and 30 on the porch. The tipster indicated that "Roberto" was Hispanic and was between the age of 30 and 35. This information, along

---

[13] *State v. Vermuele*, 234 Neb. 973, 982, 453 N.W.2d 441, 447 (1990). See, also, *State v. Dussault*, 193 Neb. 122, 225 N.W.2d 558 (1975).

with the fact that Hidalgo could be considered a Hispanic name, further supports the reliability of the tip.

### (b) Marijuana

Hidalgo argues that the marijuana leaves, stems, and seeds alone were insufficient to support the issuance of the search warrant in this case.

Hidalgo cites *United States v. Elliott*[14] to support his contention that the marijuana evidence was insufficient. In *Elliott*, the federal district court held that a small amount of discarded marijuana cigarettes and stems was evidence of past use and insufficient to "render[] the continued presence of contraband reasonably probable."[15]

Hidalgo also directs us to *State v. McKnight*,[16] a recent unpublished opinion of a single-judge panel of the Nebraska Court of Appeals. That opinion concluded that a 0.1-gram marijuana roach was insufficient to support a search warrant seeking evidence of a larger narcotics operation. In reaching that conclusion, the court noted that the affidavit in support of the warrant did not sufficiently establish the reliability of an anonymous tip in that case. The court also noted that the defendant's prior gun charges were not something the court could consider because they were only charges and not convictions and the timeframe of those charges was not stated in the affidavit.

While these cases might suggest that marijuana alone is insufficient to establish probable cause, other cases find to the contrary, noting that the possession of marijuana was illegal under state and federal law.[17]

---

[14] *United States v. Elliott*, 576 F. Supp. 1579 (S.D. Ohio 1984).

[15] *Id.* at 1582.

[16] *State v. McKnight*, No. A-15-301, 2015 WL 5025473 (Neb. App. Aug. 25, 2015) (selected for posting to court website).

[17] See *U.S. v. Briscoe*, 317 F.3d 906 (8th Cir. 2003). See, also, *U.S. v. Allebach*, 526 F.3d 385 (8th Cir. 2008).

In any case, the marijuana evidence found in the trash was not the only evidence supporting probable cause. Rather, the issuing court was also entitled to consider the Crime Stoppers tip, which detailed Hidalgo's alleged possession of weapons. There was sufficient probable cause to support the issuance of the warrant, and as such, there is no merit to Hidalgo's first assignment of error. Because we find there was probable cause to support the warrant, we need not reach Hidalgo's arguments regarding the good faith exception to the warrant requirement.

## 2. VEHICLE SEARCH

Hidalgo also argues that the warrant issued in this case was specific as to describing his house, but did not include his vehicle, and that as such, officers violated his Fourth Amendment rights when his white Nissan Sentra was searched. During police questioning, Hidalgo admitted that the firearm found in the vehicle belonged to him.

[11] As a general rule, vehicles located on premises described in a warrant may be searched, even if the vehicle is not specifically listed in the warrant.[18] This includes vehicles parked in a driveway (as this one was) or in a garage.[19] One court reasoned in part:

> [A] car parked in a garage is just another interior container, like a closet or a desk. If, as in this case, the trunk or glove compartment is not too small to hold what the search warrant authorizes the police to look for, they can search the trunk and the glove compartment.[20]

The warrant would not, however, cover a vehicle parked on a nearby street, even if police knew that the vehicle belonged to the occupant of the described premises.[21]

---

[18] 2 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 4.10(c) (5th ed. 2012) (citing cases).

[19] *Id.*

[20] *U.S. v. Evans*, 92 F.3d 540, 543 (7th Cir. 1996).

[21] 2 LaFave, *supra* note 18.

We agree with Hidalgo that the warrant did not explicitly provide that vehicles found on the property could be searched. But we do not find that such failure requires suppression of the search of Hidalgo's vehicle. The vehicle was parked in the driveway of the house described in the warrant. During the hearing on the motion to suppress, one officer testified that the vehicle was located about 10 feet from the front steps of the house and was not separated from the house by a fence or other obstruction.

Moreover, in the portion of the warrant authorizing a no-knock warrant, the issuing court specifically noted that "individuals involved in gang activity often will possess, maintain or store weapons and ammunition in the residence, building or vehicle used during the facilitation of illegal narcotics operations." Thus, the officers and issuing judge envisioned that weapons could be concealed in vehicles on the property. The Eighth Circuit has held that the search of a vehicle not explicitly listed in a warrant was covered under the scope of the warrant where facts in the affidavit indicated the defendant's connection to the vehicle in question.[22]

We conclude that the vehicle search was valid under the warrant and that there is no merit to Hidalgo's second assignment of error.

## VI. CONCLUSION

The district court did not err in denying the motion to suppress. As such, there was sufficient evidence to support Hidalgo's conviction. Accordingly, we affirm.

AFFIRMED.

---

[22] See *U.S. v. Pennington*, 287 F.3d 739 (8th Cir. 2002).