IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WILLIAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAVONTE L. WILLIAMS, APPELLANT.

Filed July 9, 2019.    No. A-18-349.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Lori A. Hoetger for appellant.

Douglas J. Peterson, Attorney General, and, on brief, Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

The Douglas County District Court accepted Javonte L. Williams' pleas of no contest to one count of robbery and one count of attempted use of a deadly weapon (firearm) to commit a felony. Williams was sentenced to 15 to 20 years' imprisonment on each count, with the sentences to run concurrently. On appeal, Williams challenges the entry of his pleas, the denial of his motion to continue sentencing, the excessiveness of his sentences, and the effectiveness of his trial counsel. We affirm.

## II. BACKGROUND

In April 2016, the State filed an information charging Williams with one count of robbery and one count of use of a deadly weapon (firearm) to commit a felony. Following several continuances, the district court scheduled the jury trial to begin on January 8, 2018. At a hearing

on January 5, the State sought leave to file an amended information, charging Williams with one count of robbery and one count of attempted use of a deadly weapon to commit a felony. Williams waived his rights to have the amended information read to him in its entirety and to have it served upon him with due notice; leave was granted to file the amended information. Williams entered pleas of no contest to each count of the amended information. The State offered the following factual basis for events it alleged occurred on or about January 19, 2016:

[A] lone black male walked into [a pharmacy store] at 90th and Dodge Street, unzipped his Carhartt coat, and pulled out an AR-15 style long rifle and pointed it directly at the employee's chest demanding money. The suspect was given $158 and fled the scene.

Witnesses saw the suspect running. A witness observed a male fitting the description run across Dodge Street and fall in the snow. He saw the weapon at that time as well. Another witness saw the suspect run nearby [a bank] through the parking lot.

Video surveillance captured the suspect walking towards Dodge Street and running away from Dodge Street back towards the apartment at precise times in question.

A Crime Stopper's tip was received directing law enforcement's attention towards [Williams]. Through investigation, information was gained substantiating the Crime Stopper's tip. A search warrant was signed.

When law enforcement executed the search warrant, law enforcement found the scarf in question [a witness described a dark or gray scarf over the suspect's face] along with . . . a live round in the drawer with [Williams'] ID and other items of venue. And in the vehicle known to be driven by [Williams] in the trunk was located the brown Carhartt jacket in question, an AR-15 style rifle . . . with 14 live rounds in the magazine.

DNA testing was done, and [Williams] was not excluded as a contributor. Probability of a random individual matching a partial DNA profile found within the major fraction of the mixture given that [Williams] expresses such a profile is 1 in 2600 . . . African Americans.

The district court found there was a factual basis for the pleas and that Williams understood the charges and possible penalties as well as his "trial rights," which rights the district court found Williams knowingly, intelligently, and voluntarily waived. The district court found Williams entered his pleas knowingly, intelligently, and voluntarily. Accordingly, the district court accepted Williams' pleas of no contest to each count and found Williams guilty of both counts. The district court ordered a presentence investigation report (PSR) and set the sentencing hearing for March 13, 2018.

At the outset of the sentencing hearing, Williams' counsel moved to continue the sentencing so that Williams could be interviewed for the PSR since Williams had failed to appear for his scheduled interview; relevant portions of the argument on this motion are set forth below. The district court denied the motion, and the sentencing hearing proceeded. The district court sentenced Williams to 15 to 20 years' imprisonment on each count, to run concurrently, with credit for 107 days served.

Williams appeals.

## III. ASSIGNMENTS OF ERROR

Williams claims, restated and reordered, that (1) his pleas were not entered in a knowing, voluntary, and intelligent manner; (2) the district court abused its discretion when it denied his motion to continue sentencing because the presentence investigation was incomplete; (3) the district court abused its discretion by imposing excessive sentences; and (4) Williams received ineffective assistance of trial counsel in several ways.

## IV. STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. ENTRY OF PLEAS

Williams claims his no contest pleas were not entered knowingly, intelligently, or voluntarily. A plea of no contest is equivalent to a plea of guilty. *State v. Wilkinson, supra*. To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018). The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id*.

Williams argues that he did not "fully understand" the nature of the charges and his constitutional rights or the questions of the court to him because he "actually was under the influence of marijuana." Brief for appellant at 9. He claims he only entered his pleas because his trial counsel "urged" him to do so due to his financial situation and told him that Williams "could not afford the expense of a jury trial." *Id.* at 9-10.

Nothing in the record of the hearing in January 2018 suggests Williams was under the influence of marijuana. There is no evidence of the same, nor is there evidence of what advice his trial counsel may have given him. To the contrary, the record of the hearing shows Williams

provided responses to the district court's questioning in an appropriate manner. Notably, the district court asked Williams whether he was "currently under the influence of any kind of alcohol, medicine, or drug" that was "in the least way interfering with [his] ability to think clearly and understand exactly what [he was] doing in answering [the court's questions]." Williams responded, "No, sir." Further, Williams indicated that he understood he was waiving, as phrased by the court, his "right to an attorney at all stages of the proceedings, and if [he could not] afford to pay an attorney, one would be appointed to represent [him]." Williams answered that he had enough time to speak with his counsel about his case, had told him everything he knew about his case, and was satisfied with the work his counsel had done for him. When asked, Williams did not report being threatened to plead no contest.

As Williams concedes, the "district court properly advised [him] of the nature of the charges and of his constitutional rights and questioned [him] regarding the voluntary nature of his pleas." Brief for appellant at 9. The district court told Williams each count charged against him under the amended information, along with the range of penalties for each count. Williams indicated he understood. The district court asked whether Williams believed he understood the charges. Williams answered, "Yes, sir." The district court informed Williams of the evidence that the State would have to prove beyond a reasonable doubt to find him guilty of each count; Williams indicated he understood. Williams understood that he had the right to plead not guilty to every charge filed against him. Williams indicated he understood his constitutional right to assistance of counsel, to confront witnesses against him, and to a public jury trial, and indicated he understood his privilege against self-incrimination, all of which the court explained to Williams sufficiently. Williams answered he understood, as stated by the court, that if he pled no contest, he would be found guilty of the offense without a trial and would have given up all the rights "except the right to have an attorney with [him]." The court also advised Williams of his right to file a motion to suppress, asking whether he understood that by pleading no contest he would waive the right to have a motion to suppress be heard before the court regarding the case. Williams responded affirmatively.

The State's factual basis was undisputed, and Williams does not take issue with the factual basis on appeal for this claim. The record shows that Williams entered his pleas of no contest freely, intelligently, voluntarily, and understandingly. The district court did not abuse its discretion in accepting them.

## 2. MOTION TO CONTINUE SENTENCING

Williams claims the district court abused its discretion in denying his motion to continue sentencing "to allow sufficient time" for the probation office to "complete" the PSR. Brief for appellant at 11. It is not disputed that Williams failed to appear for his scheduled interview with the probation office on February 23, 2018. During the sentencing hearing, Williams' trial counsel asserted that Williams was sick on February 23 and that Williams "called [the probation office] on a Monday" and asked to reschedule for that reason. He alleged Williams was told, in part, to have his counsel file a motion to continue sentencing so the probation office could interview him. Williams' trial counsel complained the PSR was "nothing more than a recitation of [Williams']

criminal record." He said Williams had been in custody for 107 days, and then was "out" for "over a year or so," and had made "every single court appearance."

Where the criminal defendant's motion for continuance is based upon the occurrence or nonoccurrence of events within the defendant's own control, denial of such a motion is not an abuse of discretion. See *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017) (denial of motion to continue sentencing upheld; delay in completion of substance abuse evaluation for inclusion in presentence investigation report was due to events in defendant's own control when she failed to appear for three scheduled appointments and, about 3 weeks before sentencing, finally appeared for appointment and was referred for evaluation).

In this case, the PSR included a copy of a letter addressed to Williams giving him notice of the date and time of his PSR interview: Friday, February 23, 2018, at 2 p.m. The letter advised that it was "very important that you keep this appointment and that you are not late for the appointment." It warned, "If you fail to keep this appointment or are late in arriving, it will not be possible to schedule another appointment for you prior to your [c]ourt sentencing date." The PSR shows that the letter was mailed to Williams on February 6. Williams does not dispute that he was so notified. The PSR indicates that Williams "did not call" on February 23 (Friday) to explain his absence after failing to report for his PSR interview scheduled that day. Rather, on February 26 (Monday), Williams called the probation officer and explained he was aware he missed his appointment, "stating that he was ill with sinusitis and slept all day," and indicating that while aware that the letter said the appointment could not be rescheduled "he was hopeful that [the probation officer] could meet with him." The probation officer told Williams his interview could not be rescheduled because of other report due dates and interviews scheduled.

The PSR also shows that Williams had an active warrant issued on February 28, 2018, in Sarpy County for failing to appear; this was related to other charges filed in that county for driving under suspension, no proof of insurance, and possession of marijuana less than one ounce. In his argument on the motion to continue sentencing, Williams' trial counsel mentioned learning about "marijuana charges" and "this warrant" the day before the sentencing hearing. He indicated the warrant was still active at that time. The State submitted to the court on the matter of the continuance.

Williams was aware of the importance of appearing for his interview on February 23, 2018, and was advised that if he failed to keep the appointment, it would not be possible to schedule another appointment prior to his scheduled sentencing date. Despite being told this, Williams failed to show. He also failed to contact the probation office until after the fact, waiting until the following Monday to make contact. Although Williams claimed to have been sick with "sinusitis and slept all day," there is no reasonable explanation for why he could not have contacted the probation office on February 23. Casting more doubt on Williams' excuse for missing the February 23 appointment is the fact that he also failed to make an appearance in Sarpy County on February 28 on other pending charges against him, resulting in the issuance of a bench warrant for his arrest. We conclude the district court did not abuse its discretion in denying Williams' motion to continue sentencing when the record shows the nonoccurrence of his PSR interview stemmed from events within Williams' own control. See *State v. Baxter, supra*.

### 3. EXCESSIVE SENTENCES

Williams claims his sentences are excessive. He was convicted of robbery under Neb. Rev. Stat. § 28-324(1) (Reissue 2008) and of attempted use of a deadly weapon to commit a felony under Neb. Rev. Stat. § 28-1205(1)(a) (Cum. Supp. 2014) and Neb. Rev. Stat. § 28-201(1) (Supp. 2015). Both convictions are Class II felonies. See §§ 28-324(2), 28-1205(1)(c), and 28-201(4)(a). A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105(1) (Supp. 2015). Williams was sentenced to 15 to 20 years' imprisonment for each of his convictions, with the sentences to run concurrently. He was given credit for 107 days served. His sentences are within the statutory range.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The PSR shows that Williams was 24 years old at the time of his sentencing. He had never married, had two dependents, had completed high school in 2012, was employed, and had a religious affiliation. The PSR describes the circumstances of the offenses and includes abundant information related to law enforcement's investigation of the incident. The PSR shows that Williams had juvenile convictions for shoplifting (two counts), disorderly conduct, and possession of marijuana. His criminal convictions as an adult include failure to appear (five counts) and theft by unlawful taking. After the offenses underlying the present case, Williams was charged with the three offenses mentioned previously (disposition unknown), including possession of marijuana.

During the sentencing hearing, Williams personally said he was "really sorry for everything that happened" and planned to use the time in prison to "better" himself. Once he got "back out," he could do "better" in terms of "chasing" his career and "goal." His counsel asked for a sentence of "one to three or one to four" on Williams' conviction of robbery and for a sentence of "five and five" on Williams' conviction of attempted use of a deadly weapon to commit a felony. The State reiterated that Williams "entered a business armed with a rifle, ultimately . . . he only obtained $158, but the cost could have been more significant," and said it believed a period of incarceration was warranted.

The district court then addressed Williams, speaking about the incidents underlying Williams' convictions. It noted that Williams walked into the pharmacy store and while the employee was at the counter, Williams "decided to pull out the firearm, your AR-15 style firearm and you put it in [the employee's] face and then you proceeded to rob [the employee]." The district court said the employee "never expected" that would happen that day and would never forget. The

district court pointed out that in imposing the sentence, it considered Williams' age, mentality, education and experience, social and cultural background, past criminal record, motivation for the offense, nature of the offense, and level of violence involved in the offense. The district court found that Williams was not an appropriate candidate for probation.

On appeal, Williams claims the district court focused solely on the offense itself and the impact on the store's employee. He argues that the district court failed to consider his age (alleging lack of maturity at time of offense), experiences (asserting employment and apprenticeship obtained following incident, and his support of his two children), and "very minimal" criminal record. Brief for appellant at 20. He says the court could not consider those circumstances as the PSR did not include a full discussion of his life and history.

The PSR was less developed than it could have been due to Williams' own inaction, as discussed previously. At sentencing, the district court asked if Williams' trial counsel had anything to add or edit to the PSR other than allocution. Williams' trial counsel had no additions or edits to provide. Williams' trial counsel and Williams each spoke to the court during sentencing, but neither talked about the matters of Williams' life that Williams now claims should have been considered. But the PSR shows the court was informed of his age and criminal record. The PSR also indicates that Williams had some education and was employed at the time of sentencing. Further, there is nothing in the record to suggest the court considered anything inappropriate. The court emphasized the nature of the offenses and amount of violence involved in the commission of the offenses, but also specifically stated it considered other relevant factors to determine the sentences. The district court did not abuse its discretion in imposing Williams' sentences.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Williams claims his trial counsel was ineffective. He has different counsel for this direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record in order to preserve such claim. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. See *id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant has the burden to show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Spang, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). The prejudice requirement in a plea context is satisfied if the defendant shows a "reasonable probability" that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.*

General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby

- 7 -

preserve the issue for later review. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). By definition, a claim insufficiently stated is no different than a claim not stated at all. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). Therefore, if insufficiently stated, an assignment of error and accompanying argument will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel. *Id.*

With those governing principles in mind, we turn to each of Williams' allegations of ineffective assistance of trial counsel.

### (a) Notice of Alibi Witness

Williams asserts his trial counsel was ineffective for failing to investigate, seek a deposition of, or provide the State notice of an alibi witness as required by Neb. Rev. Stat. § 29-1927 (Reissue 2016). He allegedly informed his trial counsel that his "girlfriend at the time could provide an alibi for his location at the time of the incident." Brief for appellant at 14.

On May 26, 2017, Williams' trial counsel filed a "Notice of Alibi Witness," providing that pursuant to § 29-1927 he would "present evidence of an alibi through the testimony" of a named witness. An attachment to the PSR of a law enforcement investigation report from March 9, 2016, suggests the witness named in the notice of alibi filing was Williams' girlfriend at that time. The record supports that, at least initially, Williams' former girlfriend was expected to testify as an alibi witness for the scheduled jury trial. There is nothing in the record to indicate whether any further investigation was conducted with regard to the girlfriend's alibi, or whether a strategic decision was made not to call her. We note that Williams does not specify what his girlfriend would claim with regard to his whereabouts at the time of the robbery, and this falls close to being insufficiently pled to preserve a claim of ineffective assistance of trial counsel. Nevertheless, given the State's assertion in its brief that the record on direct appeal in insufficient to review this claim, we conclude the same in this instance.

### (b) Motion to Suppress

Williams asserts that his trial counsel was ineffective for failing to file a motion to suppress the evidence, namely "a tan Carhartt-type jacket and an AR-15, both of the type witnesses described from the robbery," obtained as a result of the search warrant ordered February 16, 2016. Brief for appellant at 14. He asserts that the affidavit for the search warrant "largely relied" on an anonymous Crime Stoppers' tip. Brief for appellant at 15. Williams alleges that the affidavit "only asserted that investigators discovered [he] lived in an apartment complex located in the general direction the suspect was seen fleeing after the robbery and they believed from listening to recorded jail phone calls that Williams was in possession of a gun." *Id.* He argues that it was unclear whether law enforcement's independent investigation corroborated the tip. We conclude the record fully refutes this assertion.

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things

to be seized." The Nebraska Constitution provides similar protection. *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017).

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. See *id.* Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Hidalgo, supra.* In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. *Id.* at 917, 896 N.W.2d at 153. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Hidalgo, supra.* In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id.*

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *Id.* These two prongs are not accorded "independent status," but, rather, are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *Id.* at 918, 896 N.W.2d at 153.

Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Hidalgo, supra.* An affidavit in support of the issuance of a search warrant must affirmatively set forth the circumstances from which the status of the informant can reasonably be inferred. *Id.*

The search warrant affidavit (copy contained in the PSR) alleged a list of specific property (including a "[t]an colored Carhart[t] style coat with hood" and any and all firearms) believed to be concealed or kept in, on, or about a specific apartment within a complex located at 89th and Underwood Avenue, a certain vehicle registered to Williams' grandmother, or a certain vehicle registered to Williams. The affidavit alleged receipt of a "Crime Stopper tip" stating that Williams "was involved in the robbery at [the pharmacy store] on 90th Street and the caller was almost positive that [Williams] was the suspect in [the] robbery." Further, the tipster provided Williams' phone number. After learning that information, a police officer began listening to jail telephone calls made by Williams, as he had been arrested in November 2015 (before the incident in question). The officer heard Williams advise a female party that he lived on "90th and Dodge." The officer called "OPPD and MUD" to see if Williams lived near the pharmacy store at 90th and

Dodge. Both "MUD and OPPD" told the officer that Williams was the subscriber for a specific apartment address at 89th and Underwood Avenue.

The search warrant affidavit asserted substantially the same facts about how the offenses were carried out that the State later provided as a factual basis during the hearing in January 2018. Among those assertions, was that the "black male suspect" was wearing a "tan colored Carhart[t] style jacket" and "pulled out an AR-15 style rifle" during the commission of the offenses.

The affidavit also provided the following additional grounds for issuance of a warrant: the description of the suspect (i.e., physical attributes, clothing, weapon) described by employees of the pharmacy store; review of the pharmacy store's video footage of the suspect fleeing "out the front doors in a northeasterly direction;" review of video surveillance from a bank located "on the corner of 90th and Dodge" where the suspect is seen fleeing by running between that bank and another business and "continues northbound . . . until you cannot see him any further;" patrol officers having traced footprints in fresh snow on the day (of the incident) and seeing they went up to the apartment complex at 89th and Underwood Avenue; social media search on "Facebook" using Williams' alleged telephone number returning result of three public photographs of "a black male party wearing a tan colored Carhart[t] style coat" which were compared, positively, to a mugshot of Williams in police records; and certain information heard on Williams' jail telephone calls. The affidavit stated that in November 2015, Williams told a female during a jail telephone call "to have his grandmother get the car from her because his 'gun' is in there." And that later in November, Williams told the female that "he had to pay child support" and that he had to "do something to get some fucking bread." (Emphasis omitted.) The affidavit alleged that in searching "NCJIS wage information," Williams' last earned wage income was in the "third quarter of 2015"; three total wage amounts he made at "different locations" were listed.

The affidavit alleges substantially more information than Williams suggests in his appellate brief and refutes his claim regarding the clarity of law enforcement's corroboration of the tip. The tip identified Williams by name as a suspect and provided Williams' telephone number, later used in a social media search showing public photographs of a male, comparable to Williams' mugshot, wearing the style of coat worn by the suspect during commission of the offenses. Identification of Williams as a suspect led to an investigation of his jail telephone calls, in which he said he left a gun in his grandmother's vehicle. Other information learned from the jail telephone calls suggested Williams' motivation to commit the offenses, and law enforcement also independently learned that Williams resided at an apartment in the complex where the suspect ran toward after fleeing the pharmacy store.

While the affidavit lacks recitation of the basis of the informant's knowledge, law enforcement's independent investigation via several different sources strongly corroborated the anonymous tip and established that the informant's credibility was trustworthy and that the information given was reliable. A warrant properly issued because, considering the totality of circumstances illustrated in the affidavit for a search warrant in this case, there was a substantial basis for finding that the affidavit established probable cause and the affidavit also particularly described the places to be searched and things to be seized. See *State v. Hidalgo, supra*. Accordingly, Williams' trial counsel was not ineffective for not moving to suppress evidence obtained as a result of the issued search warrant. See *State v. Schwaderer*, 296 Neb. 932, 898

N.W.2d 318 (2017) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument).

### (c) Reliability of Anonymous Tip

Williams claims his trial counsel was ineffective for not investigating the reliability of the Crime Stoppers' tip (including information corroborating the tip) identifying him as the perpetrator of the robbery. He argues he informed his trial counsel that he knew who left the tip and that "that individual had motive to attempt to get Williams in trouble." Brief for appellant at 14. Williams does not explain what kind of motive the informant allegedly had to give the tip. The State argues that Williams cannot establish prejudice on this claim, because even if circumstances were as Williams claims, that evidence "would not mean that the informant's information was untrue." Brief for appellee at 15. We agree. As discussed, while the tip formed the basis of part of the affidavit for the search warrant, it was corroborated with law enforcement's own investigation of the case through other sources. This claim has no merit.

### (d) Duty to Advocate

Williams claims that his trial counsel failed to abide by his duty to advocate for his client, because his trial counsel "urged" him to plead not based on the strength of the State's evidence but because Williams was unable to afford paying trial counsel through a trial. Brief for appellant at 15. However, as stated previously, at the hearing in January 2018, the district court asked Williams whether he understood that he had "the right to an attorney at all stages of the proceedings, and if [he could not] afford to pay an attorney, one would be appointed to represent [him]." Williams answered, "Yes, sir." Any motivation to plead based on alleged advice that it was necessary due to whatever financial state Williams was in at the time would have been eliminated with the foregoing exchange between the court and Williams. Thus, the record refutes this claim of ineffective assistance of trial counsel.

### (e) Advisement of Possible Sentences

Williams asserts his trial counsel was ineffective for improperly advising him on the possible sentences he could receive if he pled no contest. He claims he expected around 5 years for his sentences and that his trial counsel improperly advised him that was likely, which "convinced" him to enter his pleas. *Id.* at 16. During sentencing, his trial counsel had asked for "five and five" on Williams' conviction for attempted use of a deadly weapon to commit a felony. The district court clarified that that count had been "reduced to attempted" so that it was punishable by "a minimum of 1 year to 50 years." Williams' trial counsel agreed but told the court, "I think we were still talking about a bottom number around five, and so that's what [Williams], I think, expected."

No matter what Williams may have expected as a sentence for either conviction, the record before he entered his pleas shows he understood the statutory penalty range for a Class II felony and understood there was no guarantee of what sentences he would receive from the court. He acknowledged that each count against him was punishable by a minimum of 1 year and a maximum of 50 years of imprisonment. When asked, Williams did not say that anyone made promises that

caused him to plead no contest (other than what he heard when the State recited the plea agreement). The court asked if he understood that the sentence he would receive was "solely" a matter for the court to decide "regardless of any plea agreement" he may have made with the State. Williams answered affirmatively. Williams answered with understanding when the court informed him that "there is no guarantee as to what [his] sentence will be." This claim of ineffective assistance is refuted by the record.

### (f) Claim of Being Under Influence of Marijuana

Williams claims his trial counsel was ineffective for allowing him to enter his pleas of no contest despite Williams being under the influence of marijuana. He claims his trial counsel "should have noticed the signs." Brief for appellant at 16. However, Williams does not elaborate on what signs he personally was exhibiting from his alleged drug use that should have been noticeable to his trial counsel (yet, based on the record, were apparently not obvious or noticeable to the State or the district court). Williams does not allege that he told his trial counsel he was under the influence of marijuana before, during, or even immediately after the plea hearing in January 2018. As previously mentioned, the record does not support that Williams was under the influence of marijuana. The district court specifically asked Williams at the plea hearing if he was "currently under the influence of any kind of alcohol, medicine, or drug" that was "in the least way interfering with [his] ability to think clearly and understand exactly what [he was] doing in answering [the court's questions]." Williams responded, "No, sir." The record refutes this claim of ineffective assistance of trial counsel.

### (g) Cumulative Effect

Williams argues that, disregarding the merit of his above-stated individual claims of ineffective assistance of trial counsel, considering them together shows his trial counsel's overall performance was deficient. Because we concluded, with one exception that could not be resolved on this record, that each individual claim had no merit, this claim also fails.

### VI. CONCLUSION

We affirm Williams' convictions and sentences. The record was sufficient to refute all but one claim of ineffective assistance of trial counsel; the record is insufficient to resolve the claim related to the alleged alibi witness.

AFFIRMED.