Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/16/2021 08:07 AM CDT

State of Nebraska, appellee, v. Lorenzo
R. Montoya, appellant.

___ N.W.2d ___

Filed March 9, 2021.    No. A-20-029.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress.

3. **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.** The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.

4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

6. **Sentences: Probation and Parole: Appeal and Error.** It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion.

7. **Constitutional Law: Search and Seizure: Search Warrants: Probable Cause.** The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures. The Nebraska Constitution provides a similar protection. The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees.

8. **Constitutional Law: Warrantless Searches.** An exception to the Fourth Amendment's warrant requirement is the community caretaking exception.

9. **Constitutional Law: Police Officers and Sheriffs: Motor Vehicles.** The community caretaking exception to the Fourth Amendment provides that local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

10. **Constitutional Law: Police Officers and Sheriffs: Investigative Stops: Search and Seizure.** In order to determine whether the community caretaking exception to the Fourth Amendment applies, the court should assess the totality of the circumstances surrounding the stop, including all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction. If, based on the totality of the circumstances, the seizing officer had a reasonable basis to believe his assistance was necessary, the stop is not unconstitutional.

11. **Constitutional Law: Search and Seizure.** A search or seizure under the community caretaking exception to the Fourth Amendment, like any other search or seizure, is subject to the standard test of reasonableness. It must be justified at its inception, based on specific articulable facts which reasonably warrant the intrusion into the individual's liberty, and it must be reasonably related in scope to the circumstances which justified the interference in the first place.

12. **Criminal Law: Police Officers and Sheriffs: Drunk Driving: Controlled Substances: Blood, Breath, and Urine Tests.** The material elements of the crime of refusal are (1) the defendant was arrested for an offense arising out of acts alleged to have been committed while

he or she was driving or in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs; (2) a peace officer had reasonable grounds to believe the defendant was driving or in actual physical control of a motor vehicle in this state while under the influence of alcohol or drugs; (3) the peace officer required the defendant to submit to a chemical test of his or her blood, breath, or urine to determine the concentration of alcohol or the presence of drugs; (4) the defendant was advised that his or her failure to submit to a chemical test of his or her blood, breath, or urine is a separate offense for which he or she could be charged; and (5) the defendant refused to submit to a chemical test as required by the peace officer.

13. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. The sentencing court is not limited to any mathematically applied set of factors.

14. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Matthew Meyerle for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Bishop, Arterburn, and Welch, Judges.

Welch, Judge.

## INTRODUCTION

Lorenzo R. Montoya appeals his jury conviction of refusal to submit to a chemical test with two prior convictions, a Class IIIA felony, and the conviction by the district court of refusal to submit to a preliminary breath test (PBT), a Class V misdemeanor. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

In August 2018, two Lancaster County deputy sheriffs, Daniel Sarnes and Samuel Bachman, received a dispatch around 2:37 a.m. regarding a male slumped over the steering wheel of a vehicle. Deputy Sarnes was the first law enforcement officer at the scene and was informed by medical personnel that they believed the driver, identified as Montoya, was intoxicated. Deputy Sarnes, who was concerned Montoya was not fit to drive, initiated contact with Montoya, who was still in his vehicle. Deputy Sarnes asked Montoya for his driver's license, his vehicle registration, and his proof of insurance documents; Montoya did not have his driver's license in his possession and had difficulty retrieving his other documents. A short time later, Montoya refused Deputy Bachman's request that Montoya take a PBT. Montoya was arrested for driving under the influence of alcohol and was later charged with count I, refusal to submit to a chemical test with two prior convictions; count II, third-offense driving under the influence; and count III, refusal to submit to a PBT.

Prior to trial, Montoya filed a motion to suppress evidence related to the initial stop of his vehicle and the evidence seized as a result of the stop. The aforementioned facts were adduced at this hearing along with testimony from Deputies Sarnes and Bachman.

Deputy Sarnes testified that the nature of the dispatch call concerned a vehicle parked on the road with a male slumped over the steering wheel, with no indication of his consciousness level. When Deputy Sarnes arrived at the scene, medical personnel, who interacted with Montoya, informed Deputy Sarnes that they believed Montoya was intoxicated. Because Deputy Sarnes was concerned that Montoya was unable to drive, he approached Montoya and asked for his documents, which Montoya produced, after some difficulty, except for his driver's license. Deputy Sarnes observed that Montoya's vehicle was parked on the road within 2 feet of the grassy edge of the gravel road.

Deputy Bachman recalled that around 2:37 a.m., a dispatch call went out, and that the nature of the call was that a man was slumped over the steering wheel of the vehicle. When Deputy Bachman arrived on the scene at approximately 2:52 a.m., he saw Deputy Sarnes interacting with Montoya, so Deputy Bachman approached the vehicle from the passenger side. He observed one unopened "bottle of Fireball . . . the size of a shooter" in the center console of the vehicle. Deputy Bachman also noticed that Montoya had bloodshot, watery eyes, and he smelled alcohol emanating from Montoya. After making these observations, Deputy Bachman asked Montoya to complete the horizontal gaze nystagmus test, the nine-step walk-and-turn test, and the one-legged stand test. Deputy Bachman testified that Montoya exhibited a level of impairment on all the tests, which suggested he was under the influence of alcohol. Based on Montoya's field sobriety test results, Deputy Bachman requested that Montoya take a PBT, but Montoya refused. Deputy Bachman testified that he believed Montoya was unable to operate a motor vehicle because he was under the influence of alcohol as demonstrated by his appearance and field sobriety test results. Deputy Bachman also testified Montoya's vehicle was stopped on the road but was not pulled off to the side of the road.

After the hearing, the court concluded that notwithstanding Montoya's argument that the deputies did not have reasonable cause or articulable suspicion to stop or detain him, they did have a duty and a right to investigate someone stopped on the roadside in a manner similar to Montoya and that after contacting Montoya, their determination he had been drinking led to their investigation of him. In furtherance of this finding, the district court noted it had watched the video showing the arrest of Montoya by the deputies and noted the location where Montoya's vehicle was parked on the road. The court ultimately denied Montoya's motion to suppress in its entirety.

## Motions in Limine/Demand for Jury Trial

Prior to trial, Montoya filed motions in limine to limit the testimony of Deputies Sarnes and Bachman regarding the content of dispatch's call about Montoya's being slumped over his steering wheel and portions of the video showing law enforcement's discussion thereof with Montoya. Montoya argued this evidence should be limited because neither deputy had personal knowledge that Montoya was slumped over his steering wheel and these statements constituted hearsay. The district court denied the motions, explaining the dispatch call provided information which the State could use to build its case.

Montoya filed a demand for a jury trial on count III, refusal to submit to a PBT, which motion was denied by the district court. The court explained that because there is no possibility of a jail sentence on count III, the count should be treated like an infraction, and that Montoya was not entitled to a jury trial on that count.

## Trial

In October 2019, a jury trial was held regarding count I, refusal to submit to a chemical test with two prior convictions, and count II, third-offense driving under the influence. Testimony was elicited from Deputies Sarnes and Bachman.

Deputy Sarnes' testimony was consistent with his testimony provided during the suppression hearing and set forth above. He further explained that Montoya wore wristbands, the kind commonly given out to bar patrons who are at least 21 years old; that Montoya told law enforcement he left Lincoln, Nebraska, to return to his home in Crete, Nebraska, and decided to take the gravel road to "see the surroundings"; and that Montoya rejected the PBT by saying no and waving his hand at the PBT device. The State also offered the video of the stop of Montoya's vehicle, which was received by the district court over Montoya's objection in the form of a renewal of his motion in limine.

Deputy Bachman also testified in a manner consistent with his testimony during the suppression hearing. When Deputy Bachman testified regarding the dispatch call, Montoya interposed hearsay and confrontation objections, thereby renewing his motion in limine, which the district court ultimately overruled. Deputy Bachman testified regarding the events leading to Montoya's arrest and explained that after Montoya refused the PBT, law enforcement arrested him on suspicion of driving under the influence.

Deputy Bachman explained that following Montoya's arrest, he asked Montoya to submit to a "DataMaster" breath test and explained that refusing this test would constitute a separate charge. Subsequent to this explanation, Montoya refused to submit to a breath test.

### VERDICTS AND SENTENCING

The jury found Montoya guilty of count I, refusal to submit to a chemical test, but not guilty of count II, driving under the influence. The court found Montoya guilty of count III, refusal to submit to a PBT. At an enhancement hearing, the court determined count I was Montoya's third offense and sentenced Montoya to 30 months' imprisonment followed by 12 months of postrelease supervision and revoked Montoya's operator's license for 15 years. The court ordered Montoya to pay a $100 fine for his conviction on count III.

### ASSIGNMENTS OF ERROR

Montoya's assignments of error, consolidated and restated, are that (1) the district court erred in denying his motion to suppress, (2) the district court erred in denying his demand for a jury trial on the misdemeanor charge, (3) the district court erred in denying his motion in limine and permitting the testimony at trial, (4) the evidence was insufficient to support his convictions, and (5) the sentence imposed on count I was excessive.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

[2] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress. *Id*.

[3] The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id*.

[4] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

[5,6] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an

abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

## ANALYSIS

### DENIAL OF MOTION TO SUPPRESS

Montoya first contends that the district court erred in denying his motion to suppress his detention, arrest, and the evidence seized therefrom because the deputies lacked reasonable suspicion or probable cause to stop and ultimately arrest him.

[7] The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures. See *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017). The Nebraska Constitution provides a similar protection. *State v. Hidalgo, supra*. The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees. *Id*.

[8-11] An exception to the Fourth Amendment's warrant requirement is the community caretaking exception. *State v. Shiffermiller, supra*. The community caretaking exception provides that

> "'[l]ocal police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'"

*State v. Shiffermiller*, 302 Neb. 245, 258, 922 N.W.2d 763, 775 (2019). The Nebraska Supreme Court has outlined how to apply the community caretaking exception, stating:

> [T]he court should assess the totality of the circumstances surrounding the stop, including all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction. If, based on the totality of the circumstances, the seizing officer had a reasonable basis to believe his assistance was necessary, the stop is

not unconstitutional. Thus, a search or seizure under the community caretaking exception, like any other search or seizure, is subject to the standard test of reasonableness. It must be justified at its inception, based on specific articulable facts which reasonably warrant the intrusion into the individual's liberty, and it must be reasonably related in scope to the circumstances which justified the interference in the first place.

*Id*. at 259, 922 N.W.2d at 776.

The district court overruled Montoya's motion to suppress, finding that the community caretaking exception justified the deputies' stop and subsequent investigation of Montoya. While recognizing the community caretaking exception can provide the basis to stop and investigate a motorist without a warrant, Montoya argues the exception did not apply here

because no evidence was adduced to show the reliability of the initial reported information. Although officers were dispatched to a report that a male in the vehicle was slumped over, Deputy Sarnes testified that he did not take the names of any of the medical personnel at the scene, did not speak with the initial reporting party, and that at the time he arrived on the scene that [Montoya] was awake.

Brief for appellant at 18. Montoya's argument is misplaced.

Law enforcement has the right to stop and investigate a motorist under the community caretaking exception when the specific articulable facts warrant the intrusion of an individual's liberty and then the intrusion reasonably relates to the scope of circumstances which justified the interference. Here, a citizen informant's tip, followed by the deputies' discovery of the vehicle positioned as described by the informant with medical personnel on the scene, justified responding to the vehicle to determine whether the motorist was in need of care. Stated differently, the report made through dispatch, taken together with what the deputies found at the scene, presented sufficient indicia of reliability to provide the deputies, based

upon the totality of the circumstances, with a reasonable basis to believe their assistance was necessary and warranted the initial interference. Contrary to Montoya's assertion, the deputies were not required to first interrogate the citizen informant before rendering potential assistance to the motorist whom the informant advised may be in need of assistance. Accordingly, the stop of Montoya was not unconstitutional and the district court did not err in denying Montoya's motion to suppress. This assigned error fails.

### Demand for Jury Trial

Second, Montoya contends the district court erred in denying his demand for a jury trial on count III, refusal to submit to a PBT. See Neb. Rev. Stat. § 60-6,197.04 (Reissue 2010). We note that the State concedes this argument in its brief.

On October 18, 2019, the State filed a motion to amend the information, and later that day, Montoya filed a demand for a jury trial under Neb. Rev. Stat. § 25-2705 (Reissue 2016). The State filed the amended information on October 21, including the count of refusal to submit to a PBT under § 60-6,197.04. Montoya argues he had a right to file a demand for a jury trial pursuant to § 25-2705. For clarity, Montoya is not arguing that he had a constitutional right to a jury trial. Instead, he argues that § 25-2705 provides him with a statutory right to a jury trial for the allegations in count III and that the district court erred in refusing to grant him a jury trial on that charge.

Montoya argues that although § 25-2705 applies to county court, the statutory language in § 25-2705(2) suggests it applies to charges of this nature in district court as well.

Section 25-2705 provides as follows:

(1) Either party to any case in county court, except criminal cases arising under city or village ordinances, traffic infractions, other infractions, and any matter arising under the Nebraska Probate Code or the Nebraska Uniform Trust Code, may demand a trial by jury. In civil cases, the demand shall be in writing and shall be filed with the court:

(a) By a plaintiff on the date the complaint is filed with the court;

(b) By a defendant on or before the date the answer is filed with the court;

(c) By a counterclaimant on the date the counterclaim is filed with the court;

(d) By a counterclaim defendant on or before the date the reply to the counterclaim is filed with the court;

(e) By a third-party plaintiff on the date the third-party complaint is filed with the court;

(f) By a third-party defendant on or before the date the answer to the third-party complaint is filed with the court;

(g) By a cross-claimant on the date the cross-claim is filed with the court; and

(h) By a cross-claim defendant on or before the date the answer to the cross-claim is filed with the court.

(2) All provisions of law relating to juries in the district courts shall apply to juries in the county courts, and the district court jury list shall be used, except that juries in the county courts shall consist of six persons.

Contrary to Montoya's assertion, § 25-2705(2) provides that laws relating to juries in district courts apply to juries in county courts, not that the provisions of § 25-2705 should apply to district courts. The clear and unambiguous language of § 25-2705 provides that if a party is entitled to a jury trial in county court under § 25-2705, then the statutes that govern juries in district court shall apply to county court juries as well. This does not mean that a party charged in district court is likewise afforded the rights set forth in § 25-2705.

Montoya next argues that because under Neb. Rev. Stat. § 24-517(6) (Cum. Supp. 2020), the county court has concurrent original jurisdiction with the district court in any criminal matter classified as a misdemeanor, that provision should somehow bootstrap the application of this county court right to district court. Section 24-517(6) provides: "Concurrent original

jurisdiction with the district court in any criminal matter classified as a misdemeanor or for any infraction. The district court shall have concurrent original jurisdiction in any criminal matter classified as a misdemeanor that arises from the same incident as a charged felony." Although § 24-517(6) did provide the district court with jurisdiction over this criminal matter, we fail to see how that likewise incorporates the right to a jury trial that extends only by statute to county court, and our research has not revealed any such application. Because the clear language of § 25-2705 would have provided Montoya a right to a jury trial for a charge of this nature only in county court and this matter was charged in district court, this assignment of error fails.

## Motion in Limine

Third, Montoya argues the court erred in allowing Deputies Sarnes and Bachman to testify that Montoya was slumped over the steering wheel of his vehicle, because they did not show they had personal knowledge of this fact. Montoya explains that under Neb. Rev. Stat. § 27-602 (Reissue 2016), a witness may testify only to matters of which he or she has personal knowledge.

Before discussing the issue of whether the deputies had personal knowledge to testify that Montoya was slumped over the wheel of the vehicle, we note that this issue was first addressed in Montoya's motions in limine. The district court denied his motions in limine regarding evidence adduced from Deputies Sarnes and Bachman, including the contents of the initial dispatch call that the driver of the vehicle was "slumped over at the wheel." At trial, Montoya properly renewed his motions, which the district court denied.

Montoya argues that the district court erred in permitting Deputies Sarnes and Bachman to testify that Montoya was slumped over the steering wheel, "because no evidence was presented and the State heard from no witnesses who corroborated the information." Brief for appellant at 21. The basis of Montoya's argument is that the deputies' testimony violated

§ 27-602, which provides: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."

Although § 27-602 does require a witness to have personal knowledge of a matter to which he or she testified, it does not apply in the context posed by Montoya here. Contrary to Montoya's assertion, neither deputy testified that Montoya was slumped over the steering wheel. During Deputy Sarnes' testimony, the State asked, "What was the nature of this dispatch call?" to which he replied, "I was dispatched to a red SUV parked on the side of the road with one male slumped over." Later, during redirect, Deputy Sarnes agreed that he was dispatched to check on a male slumped over a steering wheel. Similarly, during Deputy Bachman's testimony, the State asked, "What was the nature of the dispatch that you received at 2:37 a.m. on August 26th of 2018?" to which he replied, "It was for a male parked on the roadway that was slumped over the steering wheel of the vehicle." Both deputies' testimony clearly states that the deputies were testifying to the nature of the dispatch call. Thus, both deputies demonstrated they had personal knowledge of the nature of dispatch's call, and this testimony complies with the requirement in § 27-602. And, as we noted in the previous section of this opinion, that testimony was relevant, as it provided notice to the deputies, which triggered the community caretaking response. Accordingly, this error fails.

### SUFFICIENCY OF EVIDENCE

[12] Montoya next contends that there was insufficient evidence to sustain his convictions for refusal to submit to a chemical test under Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2020) and refusal to submit to a PBT under § 60-6,197.04.

The elements of § 60-6,197 are

(1) the defendant was arrested for an offense arising out of acts alleged to have been committed while he or she

was driving or in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs; (2) a peace officer had reasonable grounds to believe the defendant was driving or in actual physical control of a motor vehicle in this state while under the influence of alcohol or drugs; (3) the peace officer required the defendant to submit to a chemical test of his or her blood, breath, or urine to determine the concentration of alcohol or the presence of drugs; (4) the defendant was advised that his or her failure to submit to a chemical test of his or her blood, breath, or urine is a separate offense for which he or she could be charged; and (5) the defendant refused to submit to a chemical test as required by the peace officer.

*State v. Rothenberger*, 294 Neb. 810, 828, 885 N.W.2d 23, 36 (2016). Refusing to submit to a PBT is governed by § 60-6,197.04, which provides that

any person who operates or has in his or her actual physical control a motor vehicle in this state [may be required] to submit to a [PBT] for alcohol concentration if the officer has reasonable grounds to believe that such person has alcohol in his or her body, has committed a moving traffic violation, or has been involved in a traffic accident. Any person who refuses to submit to such [PBT] or whose [PBT] results indicate an alcohol concentration in violation of section 60-6,196 shall be placed under arrest.

Of the five elements needed to establish the crime of refusal to submit to a chemical test, Montoya contends the State failed to establish one of those elements, specifically that law enforcement officers had reasonable grounds to believe Montoya was driving or in actual physical control of a motor vehicle while under the influence of alcohol at the time of his arrest. Regarding his conviction for refusing to submit to a PBT, Montoya argues that there was insufficient evidence to establish he was operating or in the actual physical control

of the vehicle, and to establish the reasonableness of the deputies' belief that he had been consuming alcohol.

It is well established that in reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020); *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

Montoya alleges that there was insufficient evidence to establish the element under § 60-6,197 that the deputies "had reasonable grounds to believe [Montoya] was driving or in actual physical control of a motor vehicle . . . while under the influence of alcohol," see *State v. Rothenberger*, 294 Neb. at 828, 885 N.W.2d at 36, and the element under § 60-6,197.04 that Montoya was "operat[ing] or [had] in his . . . actual physical control a motor vehicle [and] the [deputies had] reasonable grounds to believe that [Montoya had] alcohol in his . . . body." The deputies testified that Montoya informed them he was in his vehicle because he had been traveling from Lincoln to Crete; that they detected the odor of alcohol coming from Montoya; and that Montoya wore wristbands commonly given out to bar patrons, had an unopened alcohol container in the vehicle, and admitted to law enforcement he was found "passed out" behind the wheel of his vehicle. Montoya performed poorly on the field sobriety tests. Further, both deputies testified that Montoya was in his vehicle alone when they arrived on the scene. Deputy Bachman testified that when he arrived on the scene, he observed Deputy Sarnes speaking with a male inside the vehicle. Deputy Bachman approached the vehicle and observed an unopened "bottle of Fireball" in

the middle console of the vehicle and also saw that Montoya's eyes were bloodshot, and he testified that Montoya smelled of alcohol.

Based upon this evidence, there was sufficient evidence to support Montoya's convictions for refusal to submit to a chemical test and refusal to submit to a PBT. Accordingly, this assigned error fails.

## Excessive Sentence

Montoya's last assigned error is that the district court erred in imposing an excessive sentence by not tailoring the sentence on count I to fit Montoya. He asserts that the sentence of 30 months' imprisonment is greater than what is necessary for the protection of the public, the gravity of the offense, and Montoya's rehabilitative needs.

Montoya was convicted of a Class IIIA felony. He was sentenced to 30 months' imprisonment with 6 days' credit for time served and had his license revoked for 15 years. Montoya's sentence is within the statutory sentencing range for Class IIIA felonies, which are punishable by 0 to 3 years' imprisonment followed by 9 to 18 months' postrelease supervision if imprisonment is imposed, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Reissue 2016).

[13,14] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Regarding criminal sentences, the Nebraska Supreme Court has explained:

> When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. However, the sentencing court is not limited to any mathematically applied set of factors. The appropriateness of a

sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

*Id*. at 114-15, 927 N.W.2d at 60-61.

Montoya's presentence investigation report shows he has a criminal record, which includes convictions including driving under suspension, third-offense driving under the influence, and multiple convictions for possession of a controlled substance.

During the sentencing hearing, the district court considered relevant factors in imposing Montoya's sentence and was not limited to a mathematical set of factors. At the sentencing hearing, the district court noted it had reviewed Montoya's presentence investigation report and considered the facts that many people are killed by drunk drivers each year and that he was convicted of refusing to take a chemical test with two prior convictions, which is a significant felony. Based on the factors considered by the court on the record before pronouncing the sentence, we cannot say the court abused its discretion in rendering the sentence here. This assignment fails.

## CONCLUSION

For the reasons previously outlined, we affirm Montoya's convictions and sentence.

AFFIRMED.