IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. KING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SCOTT J. KING, APPELLANT.

Filed January 16, 2024.    No. A-23-474.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Angelica W. McClure, of Kotik & McClure Law, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Scott J. King appeals from his plea-based conviction and sentence for first offense driving during revocation, a Class IV felony. He argues that the district court erred in imposing an excessive sentence and in requiring him to wait 2 years before being eligible for an ignition interlock device. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

King was initially charged with driving during revocation, subsequent offense, a Class IIA felony, and operating a motor vehicle that was not equipped with an ignition interlock device, a Class IV felony. Pursuant to a plea agreement, King pled guilty to an amended information charging him with first offense driving during revocation, a Class IV felony.

The State provided a factual basis which set forth that at 9 p.m. on February 15, 2022, Lincon police officers observed a vehicle traveling at a high rate of speed. After the vehicle pulled

into a parking lot, an officer ran the license plate and determined that the plate was fictitious. Officers observed the driver, later identified as King, walking away from the area of the vehicle. A check of King's license revealed that his license had been revoked for third offense driving under the influence (DUI) on June 19, 2013, and that King was not eligible to drive until June 19, 2028. At the time of the offense, King was operating the vehicle without an ignition interlock permit or a 24/7 permit.

At the sentencing hearing, defense counsel explained to the court that King had always maintained "that he was trying to get this vehicle fixed so that he could get the interlock put back in it." King informed the court that he was not aware that his interlock permit was revoked and that he "was just going to the gas station to put gas in [the vehicle] to go take it to . . . get the interlock put in it the very next day." The district court stated:

> The Court does note that . . . King did receive a generous plea offer in this case and that he had a reduction in the charge. The Court also counted . . . at least five DUI convictions, at least four [driving under suspension (DUS)] convictions, and at least three, counting this one, driving during revocation convictions.
>
> At the time of this case, [King] had been consuming alcohol, which was on February 15th, of 2022, although he said in the PSI that he had not consumed alcohol since March of 2021. Also, he says that he recognizes that alcohol has been a problem for him. Although, he says that in the future he may have a drink or two.
>
> He picked up more offenses after this offense. He scored very high on the risk to recidivate on the [level of service/case management inventory (LS/CMI)] with a score of 31. . . . I believe he was on probation or [post-release supervision] during the time of this offense and tested positive for methamphetamine four, possibly five times. He's habitual criminal eligible. And during the time that he was on probation he showed a positive blow on his interlock device at least seven times.
>
> It's also concerning to the Court that he appears to work for a tire service company, which it appears he . . . might even have to as a part of that, drive vehicles, which is something that . . . King should probably never have the privilege of doing again because he can't seem to follow any rules regarding . . . drinking and driving.

The court also found that there were substantial and compelling reasons why King could not effectively and safely be supervised in the community on probation. Further, the court found that imprisonment of King was necessary for the protection of the public because the risk was substantial that during any period of probation he would engage in additional criminal conduct and that a lesser sentence would depreciate the seriousness of his crime and promote disrespect for the law.

The district court sentenced King to 2 years' imprisonment followed by 12 months of post-release supervision. Additionally, the court revoked King's operator's license for 15 years from the date of King's release from imprisonment and provided that after King's operator's license had been revoked for 2 years, King could obtain an ignition interlock permit for the remainder of the revocation period. King was awarded credit for 1 day served and the sentence was ordered to run consecutively to any other sentence that King was currently serving. King has timely appealed to this court and is represented by different appellate counsel.

## ASSIGNMENTS OF ERROR

King assigns that the district court abused its discretion in (1) imposing an excessive sentence and (2) requiring a 2-year period before he was eligible for an ignition interlock device.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013); *State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021).

## ANALYSIS

### EXCESSIVE SENTENCE

King's first assignment of error is that the sentence imposed is excessive. He contends that he should have been sentenced to probation. In the alternative, he argues that if he is not a good candidate for probation, he would also not be a good candidate for post-release supervision. He requests that he be sentenced to probation or that his sentence be reduced to not include any period of post-release supervision.

King was convicted of first offense driving during revocation, a Class IV felony. See Neb. Rev. Stat. § 60-6,197.06 (Cum. Supp. 2020). His sentence of 2 years' imprisonment followed by 12 months of post-release supervision is within the statutory sentencing range for Class IV felonies, which are punishable by a minimum of no imprisonment and no post-release supervision and a maximum of 2 years' imprisonment and 12 months of post-release supervision and/or a $10,000 fine. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) (felonies; classification of penalties). Additionally, the court properly revoked King's operator's license for 15 years pursuant to § 60-6,197.06(1). King received a substantial benefit from his plea agreement wherein a Class IIA felony was reduced to a Class IV felony and an additional Class IV felony was dismissed.

At the time of the presentence investigation report, King was 52 years old, divorced, and had an adult daughter with whom he had a strained relationship. King had earned his GED and had been employed full-time with a tire service company since October 2021. King's criminal history is extensive and includes convictions for alcohol-related offenses, drug-related offenses, theft, assault, DUI, and driving under suspension or revocation. Those convictions include:

•**Alcohol-related offenses**: five DUI convictions, four driving under revocation/suspension convictions, and one conviction each for possession of an open alcohol container and minor in possession;

•**Drug-related offenses**: possession of methamphetamine, attempted possession of methamphetamine, possession of drug paraphernalia, possession of marijuana, possession of a controlled substance, possession of a controlled substance with the intent to deliver, and attempted possession of a controlled substance;

•**Theft convictions**: two convictions for theft by unlawful taking and one conviction each for receiving stolen property, robbery, and concealing merchandise;

•**Other convictions**: two convictions for criminal mischief and one conviction each for reckless driving, second degree burglary, false reporting, third degree assault, attempted possession of a firearm by a felon or fugitive, and numerous other traffic-related offense and other minor offenses.

King's sentences for his offenses have included fines, probation, jail, prison, and post-release supervision. He had terms of parole and post-release supervision revoked due to compliance issues and, during previous incarcerations, he received several writeups for misconduct. The LS/CMI assessed King as a very high risk to reoffend. King's statement included in the PSR stated in pertinent part:

> I drove my truck to the gas station to fill it up for the next day to take [the truck] to have the interlock installed and drove it back to my job [which] was only 4 [b]locks away[.] I do realize [that] I shouldn't [have] been driving at all, and I'll never let anything such as this happen again. I do apologize for my actions and hope you know [that] I have learned from this.

Despite King's assurances, subsequent to the current offense, King received two additional charges including violating an ignition interlock restriction. Other false statements made by King during his PSR interview included statements that he last consumed alcohol and marijuana in March 2021--he tested positive for alcohol in the current offense and tested positive for marijuana on four different occasions while on probation in 2022. He also denied ever being involved in the sale or delivery of drugs, but he was convicted in July 2003 of possession of a controlled substance with the intent to deliver. King was sanctioned several other times for violating the conditions of his prior term of post-release supervision and he was on post-release supervision at the time of this offense.

In sum, the sentence imposed was not an abuse of discretion. The sentence was within the statutory sentencing range and was supported by King's criminal history, which includes multiple convictions for DUI and driving during suspension/revocation, his subsequent offense of violation of an ignition interlock restriction, his continued use of alcohol and marijuana, his prior revocations of probation and post-release supervision, and his high risk to reoffend (which was borne out by his subsequent convictions). Furthermore, the court did not abuse its discretion by sentencing King to a term of imprisonment followed by post-release supervision rather than probation because King clearly was not a candidate for probation.

IGNITION INTERLOCK DEVICE

King also contends that the district court abused its discretion in requiring him to wait 2 years before he is eligible to obtain an ignition interlock device.

King was convicted of first offense driving during revocation, a Class IV felony. See Neb. Rev. Stat. § 60-6,197.06. Section 60-6,197.06, provides in relevant part:

> (1) Unless otherwise provided by law pursuant to an ignition interlock permit or a 24/7 sobriety program permit, any person operating a motor vehicle on the highways or streets of this state while his or her operator's license has been revoked pursuant to section

28-306, section 60-698, subdivision (4), (5), (6), (7), (8), (9), or (10) of section 60-6,197.03, or section 60-6,198, or pursuant to subdivision (2)(c) or (2)(d) of section 60-6,196 or subdivision (4)(c) or (4)(d) of section 60-6,197 as such subdivisions existed prior to July 16, 2004, shall be guilty of a Class IV felony, and the court shall, as part of the judgment of conviction, revoke the operator's license of such person for a period of fifteen years from the date ordered by the court **and shall issue an order pursuant to section 60-6,197.01**. Such revocation and order shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked.

(Emphasis supplied.) Neb. Rev. Stat. § 60-6,197.01 provides:

(1) Upon conviction for a violation described in section 60-6,197.06 or a second or subsequent violation of section 60-6,196 or 60-6,197, the court shall impose either of the following restrictions:

(a)(i) The court shall order all motor vehicles owned by the person so convicted immobilized at the owner's expense for a period of time not less than five days and not more than eight months and shall notify the Department of Motor Vehicles of the period of immobilization. . . .

. . . .

(b) As an alternative to subdivision (1)(a) of this section, the court shall order the convicted person, in order to operate a motor vehicle, to obtain an ignition interlock permit and install an ignition interlock device on each motor vehicle owned or operated by the convicted person if he or she was sentenced to an operator's license revocation of at least one year. **If the person's operator's license has been revoked for at least a one-year period, after a minimum of a forty-five-day no driving period**, the person may operate a motor vehicle with an ignition interlock permit and an ignition interlock device pursuant to this subdivision and shall retain the ignition interlock permit and ignition interlock device for not less than a one-year period or the period of revocation ordered by the court, whichever is longer. No ignition interlock permit may be issued until sufficient evidence is presented to the department that an ignition interlock device is installed on each vehicle and that the applicant is eligible for use of an ignition interlock device. If the person has an ignition interlock device installed as required under this subdivision, the person shall not be eligible for reinstatement of his or her operator's license until he or she has had the ignition interlock device installed for the period ordered by the court.

(Emphasis supplied.)

It is clear that § 60-6,197.01(1) mandates that upon a conviction for violation of § 60-6,197.06, the sentencing court "shall" either order all motor vehicles owned by the convicted defendant immobilized at the owner's expense for a period lasting from 5 days to 8 months, or order the convicted defendant, in order to operate a motor vehicle, to obtain an ignition interlock permit and install an ignition interlock device on each vehicle he owns or operates. If an ignition interlock is allowed pursuant to court order, there must be "**a minimum** of a forty-five-day no driving period" which "shall remain in place for not less than 1 year or the period of revocation ordered by the court, whichever is longer." See § 60-6,197.01(1)(b) (emphasis supplied).

We note that King does not dispute the statutory parameters for imposing an ignition interlock device, nor does he dispute that the court's order herein comports with the statutory parameters; instead, he claims that the district court abused its discretion by requiring him to wait 2 years before he is eligible to obtain an ignition interlock device. He argues that "[t]here was no justification or rationale from the Court in regard to why a two year no driving period was imposed on [him] instead of just the minimum forty-five days" and that "the two-year period sets [him] up for failure" on the 1-year period of court-ordered post-release supervision. Brief for appellant at 17. However, the court considered King's criminal record and the circumstances of the instant case in determining that a 2-year period of obtaining an ignition interlock device was justified and we cannot say that the court's determination in this regard was an abuse of discretion.

King also claims that the 2-year waiting period for obtaining an ignition interlock was improper because it appeared to have been the product of the judge personally attacking him by saying that King "should probably never have the privilege of [driving] again because he can't seem to follow any rules regarding driving, or drinking and driving." However, the full context of the court's statement is contained as follows:

> The Court also counted over . . . King's criminal history at least five DUI convictions, at least four DUS convictions, and at least three, counting this one, driving during revocation convictions.
>
> At the time of this case, he had been consuming alcohol, which was on February 15th, of 2022, although he said in the [presentence investigation report] that he had not consumed alcohol since March of 2021. Also he says that he recognizes that alcohol has been a problem for him. Although he says that in the future he may have a drink or two.
>
> He picked up two more offenses after this offense. He scored very high on the risk to recidivate on the [LS/CMI] with a score of 31. . . . I believe he was on probation or [post-release supervision] during the time of this offense and tested positive for methamphetamine four, possibly five times. He's habitual criminal eligible. And during the time that he was on probation he showed a positive blow on his interlock device at least seven times.
>
> It's also concerning to the Court that [King] appears to work for a tire service company, which it appears he may be able to, might even have to as a part of that, drive vehicles, which is something that . . . King should probably never have the privilege of doing again because he can't seem to follow any rules regarding driving, or drinking and driving.

Contrary to King's argument that the court's statement was a "personal attack" on him, the court's statement was made in the context of the court's legitimate concerns regarding King's criminal history, which continued even after he was arrested for the current offense, and concerns regarding King's employment, which might require him to operate vehicles despite King not being eligible to do so. We find no abuse of discretion in the court's order requiring King to wait 2 years before he is eligible to obtain an ignition interlock device. This assignment of error fails.

## CONCLUSION

Having found that King's assignments of error are without merit, we affirm his plea-based conviction and sentence.

AFFIRMED.