IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JOHNSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHAWN W. JOHNSON, JR., APPELLANT.

Filed June 25, 2024.    No. A-24-017.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and John C. Jorgensen for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Shawn W. Johnson, Jr. appeals from his plea-based conviction of third degree domestic assault with a prior conviction, a Class IIIA felony. He contends that the district court abused its discretion by imposing an excessive sentence and by including a provision in the post-release supervision order preventing him from all forms of contact with the victim. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On July 8, 2023, the victim, who had been in an intimate dating relationship with Johnson since April, attempted to break up with him. During the conversation, which occurred at Johnson's home, the parties argued, after which Johnson "bit [the victim] on her right hand and hurt her lip." After this altercation, the victim drove her car to her residence, with Johnson following in his vehicle. After the victim pulled into her garage, Johnson blocked her in with his vehicle so she

- 1 -

could not leave. The victim locked herself in her car, but Johnson was able to pull down the front driver's side window and unlock her car. With the victim's car unlocked, Johnson began choking the victim with both hands to the point that she was unable to breathe. As the victim attempted to get away, Johnson grabbed her and put her in a headlock. As the victim was screaming for help, officers arrived.

When officers arrived, they observed Johnson attempting to pull the victim into a garage. The victim was calling for help and screaming for Johnson to let her go. Officers instructed Johnson, who "was actively pulling [the victim's] arm and upper body," to release the victim. After physically separating the parties, the officers noted "rub marks" on the victim's neck, what appeared to be a bite mark on her right hand, and that her voice was raspy. The victim informed officers that she was in fear and worried for her safety. Johnson was arrested and initially charged with assault by strangulation or suffocation with a prior conviction, a Class IIA felony, and third degree domestic assault with a prior conviction, a Class IIIA felony.

Pursuant to a plea agreement, Johnson agreed to plead no contest to third degree domestic assault with a prior conviction. The State dismissed the other charge and provided a factual basis including the facts as previously set forth.

At the sentencing hearing, the district court stated that it had reviewed the presentence investigation report (PSR). The court noted Johnson's criminal history including prior convictions for domestic violence and that

> This case . . . comes on the heels of [previous charges for domestic assault, tampering, and violation of a protection order,] and also, while [Johnson] was on post-release supervision, which is certainly notable because the first term and condition of post-release supervision is that he not violate any laws or engage in acts injurious to others, which is exactly what he did in this particular case.

The court further stated:

> This is really concerning behavior, Mr. Johnson. You obviously didn't get the hint when you engaged in this kind of behavior with [a previous victim] and ended up in prison as a result of it and placed on post-release supervision with certain terms and conditions, which certainly included that you not continue to engage in this kind of behavior, but you have.
>
> It is impossible for me to find that you are a good candidate for probation when you have demonstrated that while on an order of, essentially, supervision that you will violate that order regardless of the terms and conditions of that.

The court then found that imprisonment was necessary for the protection of the public, that there was a substantial likelihood that during a period of probation that Johnson would engage in additional criminal conduct, and a lesser sentence would depreciate the serious nature of the offense and promote disrespect for the law. The court sentenced Johnson to 3 years' imprisonment followed by 18 months of post-release supervision. Johnson received credit for 159 days previously served. The order regarding Johnson's post-release supervision included a provision prohibiting contact with the victim. Johnson's attorney objected to the no-contact provision stating:

> That has not been part of the underlying case up to this point.

[Johnson and the victim] have had contact while the case has been pending. As you noted, . . . they would be permitted to have contact during the course of execution of him completing the sentence.

And so then it doesn't make much sense for them to then suddenly not be able to have contact while out on post-release.

[The victim is] not asking for there to be . . . no contact. There's been no other demonstration or ongoing care or concern that she . . . [is] in danger.

So I would ask the Court to reconsider the no[-]contact order as part of the post-release conditions.

The court overruled the request stating that it had "considered all of those things in imposing that condition." Johnson has timely appealed to this court and is represented by the same counsel that represented him during his plea and sentencing.

## ASSIGNMENTS OF ERROR

Johnson contends that the district court abused its discretion by (1) imposing an excessive sentence and (2) including a provision in the post-release supervision order preventing him from all forms of contact with the victim.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013); *State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021).

Whether a condition of probation imposed by the sentencing court is authorized by statute is a question of law. *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013).

## ANALYSIS

### EXCESSIVE SENTENCE

Johnson first assigns the district court abused its discretion in imposing an excessive sentence. Specifically, Johnson argues that the district court failed to account for his likelihood of rehabilitation through probation, the nature of the offense, his strong support network and family relationships, his prior success in probation, his remorse for the crime and acceptance of responsibility, and his motivation "to take concrete steps in preventing any future incidents." Brief for appellant at 11. He further contends that the offense "did not involve serious violence." *Id*. at 13.

Johnson was convicted of third degree domestic assault with a prior conviction, which is a Class IIIA felony. See Neb. Rev. Stat. § 28-323 (Reissue 2016). A Class IIIA felony carries a minimum term of no imprisonment and a maximum term of 3 years' imprisonment followed by 9 to 18 months of post-release supervision. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022).

- 3 -

Johnson was sentenced to the maximum of 3 years' imprisonment followed by 18 months of post-release supervision; thus, his sentence falls within the statutory guidelines.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The PSR indicates that Johnson was 32 at the time of sentencing, had obtained a GED, and had been studying to become an electrician. Johnson was single with one dependent. Johnson's criminal history includes convictions for third degree domestic assault, third degree domestic assault with a prior conviction, strangulation, violating a protection order, obstructing a peace officer, theft by receiving stolen property ($501-$1,499), driving under the influence, refusal to submit to a breath test, and driving under suspension. Both the level of service/case management inventory (LS/CMI) and the domestic violence matrix assessed Johnson as having a high risk of reoffending. The PSR included the following comments by the investigating probation officer:

> [Johnson's] criminal history and self-report reflects that he has engaged in early and diverse antisocial behavior (documented and self-reported problems of adjustment during adolescence, official record of violence/assault, history of escape or unlawfully-at-large, and charge, laid, probation breached or parole suspended during prior community supervision). His potential for assaultive behavior, over-assertion/aggression, being superficially "charming" but appears to repeatedly disregard the rules and feelings of others, and impulsivity indicate an antisocial pattern.

We reject Johnson's claim that the district court failed to account for various factors which supported a determination that probation was an appropriate sentence. The district court specifically stated that it had considered the PSR which included information concerning all of the factors to be considered by a sentencing court. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Further, a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *Id*.

We further reject Johnson's claim that the offense "did not involve serious violence." Brief for appellant at 13. To the contrary, the PSR included statements made to officers by the victim that Johnson had bit her right hand and her lip, that Johnson had choked her to the point where she was unable to breathe, and that the incident left her in fear and worried for her safety. The incident required the victim to seek medical attention for her injuries and the PSR included photographs of the victim's injuries including a bite mark on her hand, a bloody and swollen lip, bruising on her neck, and broken blood vessels in both eyes.

In sum, based upon factors including that the sentence imposed was within the statutory sentencing range; Johnson's criminal history, including convictions for domestic assault, strangulation, and violation of a protection order; Johnson's high risk to reoffend as assessed by the LS/CMI and domestic violence matrix; and the seriousness of the offense and the injuries caused to the victim, the sentence imposed was not an abuse of discretion. Likewise, based upon these factors, the district court did not abuse its discretion in failing to sentence Johnson to probation. This assignment of error fails.

NO-CONTACT PROVISION

Johnson's second assignment of error is that the court abused its discretion in including a no-contact provision during the term of his post-release supervision. He argues that the no-contact provision "has no value in protecting the victim from a repeat offense when she will have been in regular contact" with him during his imprisonment. Brief for appellant at 14.

When a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute. *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013). Whether a condition of probation imposed by the sentencing court is authorized by statute is a question of law. *Id*. The applicable statute, Neb. Rev. Stat. Ann. § 29-2262(1) (Supp. 2023) provides, in pertinent part that, "[w]hen a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life." "Probation includes post-release supervision and supervision ordered by a court pursuant to a deferred judgment under section 29-2292." Neb. Rev. Stat. § 29-2246 (Cum. Supp. 2022). We note that § 29-2246 was amended by 2024 Nebraska Laws L.B. 253 becoming effective later in 2024.

As this court noted in *State v. Bond*, 23 Neb. App. 916, 937, 877 N.W.2d 254, 270 (2016), *disapproved on other grounds, State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023):

When a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute. . . . The applicable statute provides that "[w]hen a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life." These include requiring the offender to "meet his or her family responsibilities," to "refrain from frequenting unlawful or disreputable places or consorting with disreputable persons," and to "satisfy any other conditions reasonably related to the rehabilitation of the offender." We construe these provisions to authorize a no-contact condition of probation when it is reasonable and necessary to the rehabilitative goals of probation. *Rieger,* 286 Neb. at 792-93, 839 N.W.2d at 286, quoting Neb. Rev. Stat. § 29-2262 (Cum. Supp. 2012).

Here, Johnson was convicted of a violent attack on his domestic partner. And, as the State notes in its brief, "a no-contact order would not be necessary until [Johnson] is released, as he would be unable to commit a second strangulation against the victim while imprisoned." Brief for appellee at 10.

Nebraska appellate courts have specifically considered whether no-contact orders between a defendant and a spouse or boyfriend/girlfriend were reasonable and necessary to the rehabilitative goals of probation. In the first case, *State v. Rieger*, 286 Neb. 788, 789, 839 N.W.2d

282, 284 (2013), the Nebraska Supreme Court determined that a term of probation prohibiting the defendant from having contact with her husband without the court's prior permission was an abuse of discretion. Specifically, the Court noted that "the broad prohibition on [the defendant's] contact with her husband is an unreasonable infringement upon [her] fundamental rights arising from marriage." *Id.*, 286 Neb. at 789, 839 N.W.2d at 284. The court in *Rieger, supra*, held that the provision prohibiting the defendant from having contact with her husband did not satisfy the requirements that a condition of probation should be narrowly tailored and reasonably related to the rehabilitative process where there was no evidence the provision was necessary to protect the defendant from her husband, it was unclear from the record whether the provision was necessary to protect the defendant's children, less rigorous restrictions could have been imposed to protect the children if necessary. *Id*. The court remanded the cause for resentencing for the court "either to remove the no-contact condition or to tailor it more narrowly to the factual circumstances of the case and the rehabilitative goals sought to be achieved." *State v. Rieger*, 286 Neb. 788, 798, 839 N.W.2d 282, 289 (2013).

In the second case, *State v. Bond*, 23 Neb. App. 916, 937-38, 877 N.W.2d 254, 270-71 (2016), *disapproved on other grounds, State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023), this court considered the defendant's claim that the district court improperly imposed a term of probation prohibiting the defendant from having any contact with her boyfriend. In our analysis of this case, we stated:

> The present case is distinguishable from *Rieger* in key respects. Significantly, [the current defendant] is not married to [her boyfriend]. Furthermore, [the defendant] informed the court at the sentencing hearing that [her boyfriend] had recently moved out of the apartment and that prior to that, for "probably" the past year, [her boyfriend] would "come and go" and [the defendant] and [her boyfriend] would sleep in separate rooms. [The defendant] explained "it was really not a relationship." We do not believe that this "on again, off again" relationship is entitled to the same constitutional protections as the marriage in *Rieger*.

> More important, however, the no-contact provision in the present case serves an important rehabilitative purpose, unlike the no-contact provision in *Rieger, supra*. As [the defendant's] PSR revealed, she has a long history of substance abuse and a significant drug-related criminal history. The PSR indicated [the defendant] was at high risk for recidivism and was in need of substance abuse treatment. Although [the defendant] contends the PSR did not indicate she and [her boyfriend] used drugs together, this is disingenuous; the search of [the defendant] and [her boyfriend's] apartment revealed drugs and drug paraphernalia in the bedroom they shared at the time of the search. It is difficult to imagine [the defendant] achieving the goal of rehabilitation in such an environment. The no-contact provision, in combination with the other terms of probation that were focused on addressing [the defendant's] substance abuse problem, was reasonably related to the rehabilitative process.

We find that the instant case presents a situation more similar to *Bond, supra*. Here, Johnson is not married to his girlfriend and he not only committed a serious assault upon her requiring her to seek medical attention, but he had been convicted of strangulation or assault of

prior domestic partners. Further, unlike *Rieger, supra*, where there was no evidence that a no-contact provision was necessary to protect the defendant from her husband, the no-contact provision in the instant case was necessary to protect the victim from Johnson. Accordingly, we find that, contrary to Johnson's arguments, the no-contact provision was reasonable and necessary for Johnson's rehabilitation during the term of his post-release supervision. This assignment of error fails.

## CONCLUSION

Having considered and rejected Johnson's assigned errors, we affirm his conviction and sentence.

AFFIRMED.